JAMES McMANIS (40958)
ABIMAEL BASTIDA (303355)
CHRISTOPHER ROSARIO (326436)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
Email: jmcmanis@mcmanislaw.com
       abastida@mcmanislaw.com

Attorneys for Plaintiff
DANIEL CHUNG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL CHUNG, an individual, | Case No. 3:21-cv-07583-WHO |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | **DEMAND FOR JURY TRIAL** |
| COUNTY OF SANTA CLARA, a public entity; JEFFREY F. ROSEN, individually; and DOES 1-50, inclusive, | |
| Defendants. | |

## INTRODUCTION

1. Plaintiff Daniel Chung ("Plaintiff" or "Mr. Chung") was a deputy district attorney in Santa Clara County. He was employed by the Santa Clara County District Attorney's Office from 2018 until 2021. As a deputy district attorney, Mr. Chung reported to, among others, Jeffrey Rosen, the Santa Clara County District Attorney.

2. Mr. Chung brings this action pursuant to 42 U.S.C. § 1983, and the Constitution of the United States, to redress deprivation of rights secured by the United States Constitution. Defendants, County of Santa Clara, Jeffrey Rosen, and DOES 1 through 50 (hereinafter, collectively "Defendants"), violated Mr. Chung's constitutional right to free speech.

///

## JURISDICTION AND VENUE

3. This action arises under 42 U.S.C. § 1983, and the Constitution of the United States. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the action arises therein, and a substantial part of the events giving rise to this action occurred therein.

## INTRADISTRICT ASSIGNMENT

5. Assignment of this action to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e), because a substantial part of the events giving rise to the claims alleged herein occurred in the City of San Jose, County of Santa Clara.

## PARTIES

6. Mr. Chung was, at all relevant times, employed by the County of Santa Clara.

7. Defendant County of Santa Clara ("County") is, and at all relevant times was, a chartered subdivision of the State of California, a public entity, with the capacity to sue and be sued. Defendant County and defendant Jeffrey Rosen are responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Santa Clara County District Attorney's Office and its employees and agents. At all times relevant herein, defendant County and defendant Rosen were responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Santa Clara County District Attorney's Office, their employees and agents, and Does 1 through 50, inclusive, complied with the laws of the State of California and the Constitution of the United States.

8. The Office of the Santa Clara County District Attorney is a department of the County ("Department"). The District Attorney is the highest position within the Department. Defendant Jeffrey Rosen ("District Attorney Rosen" or "Defendant Rosen") is, and at all relevant times was, the Santa Clara County District Attorney and the Department head. District Attorney Rosen is sued in his individual capacity.

///

9. As the Santa Clara District Attorney, Defendant Rosen has, and at all relevant times had, final policymaking authority within the Department. Defendant Rosen has, and at all relevant times had, the exclusive power to appoint, suspend or remove assistants, deputies, clerks, and other employees in the Department. This power included the power to assign, reassign, or transfer assistants, deputies, clerks, and other employees to various positions within the Department. In addition, Defendant Rosen has, and at all relevant times had, the ultimate authority to establish administrative policies related to the general operation of the Department.

10. There is, and at all relevant times was, a policy and practice within the Department that no appointments, suspensions, removals, assignments, reassignments, or transfers of Department members were done without the approval of the Department head, Defendant Rosen, who has, and at all relevant times had, the final authority regarding appointments, suspensions, removals, assignments, reassignments, and transfers of Department members.

11. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

12. Each defendant sued in this complaint acted as the agent or employee of every other defendant.

## GENERAL ALLEGATIONS

13. Plaintiff hereby incorporates by reference paragraphs 1 through 12, inclusive.

14. Mr. Chung is Korean American. He grew up in Milpitas. After graduating from Harvard College and Columbia Law School, Mr. Chung returned to Santa Clara County in 2018 to work as a deputy district attorney in the County.

15. Mr. Chung quickly proved to be an outstanding prosecutor. In 2020, he was awarded the Robert L. Webb Award, an "Excellence Award" presented by the Santa Clara

County District Attorney. Mr. Chung prosecuted domestic violence cases and served in the Violent Felonies Unit. The Violent Felonies Unit was, and is, an important assignment highly regarded and much sought after by deputy district attorneys.

16. On February 14, 2021, Mr. Chung (an Asian American), speaking as a **private citizen** and not in his capacity as deputy district attorney, published an **opinion piece** in a local newspaper about the recent surge of racism and violence towards Asian Americans following the COVID-19 pandemic. (Attached hereto as **Exhibit A**.) More specifically, Mr. Chung's Op-Ed discussed California's ongoing criminal justice reform efforts and the violence against Asian Americans in the Bay Area. Mr. Chung told the newspaper that the opinion piece stated only his personal views.

17. Mr. Chung's opinion piece referenced generally his experience as a prosecutor. He did not specifically mention the County, the Santa Clara District Attorney's Office, or Defendant Rosen. Nor did Mr. Chung refer to his title as Santa Clara County Deputy District Attorney.[1]

18. Mr. Chung's Op-Ed did not refer to any investigation, litigation, or adjudicative proceeding, civil or criminal, in which Mr. Chung was an active participating lawyer. Nothing mentioned in Mr. Chung's opinion piece violated any lawful court order, statute, rule of court, or State Bar rule.

19. At the time Mr. Chung wrote and published the February 14, 2021 opinion piece, his official duties as deputy district attorney did **not** include writing opinion pieces or providing commentary to local newspapers. As a deputy district attorney, Mr. Chung was allowed to respond to media inquiries as to matters of public record about cases **he was handling** where a **complaint had been filed**. Mr. Chung, however, was **not** required to communicate with the media or news organizations regarding matters of general public concern as part of his regular job duties. In addition, the Op-Ed was not in response to a media inquiry.

///

---

[1] At the end of the article, an italicized statement was added by the newspaper identifying Mr. Chung as a Santa Clara County Deputy District Attorney. Mr. Chung did not write this statement, nor was it part of his opinion piece.

20. On February 16, 2021, and thereafter, Mr. Chung was wrongfully disciplined for his Op-Ed piece. Immediately after the opinion piece was published, Defendant Rosen authorized or ratified Mr. Chung's reassignment to Mental Health Court and then to Juvenile Justice. These assignments were generally considered less prestigious. Mr. Chung was not provided with any explanation for the reassignment.

21. On April 16, 2021, Defendant Rosen authorized or ratified the recommendation of a two-week (80-hour) suspension of Mr. Chung.

22. On May 28, 2021, Defendant Rosen authorized or ratified an administrative leave of Mr. Chung, who was walked out of the District Attorney's Office by three armed investigators.

23. On or about May 31, 2021, Defendant Rosen authorized or ratified the issuance by District Attorney Bureau of Investigation Captain Whittington of a "Be On the Lookout" notice ("BOLO") to the entire Department. The notice alerted the staff without explanation that "DDA Chung is not allowed on County property until further notice," and included a non-work photograph of Mr. Chung.

24. On or about June 2, 2021, Defendant Rosen authorized or ratified the issuance by Captain Whittington of a second BOLO notice to all employees of the Department. The notice specified that Mr. Chung was "not allowed on County premises occupied by or affiliated with the District Attorney's Office."

25. On June 11, 2021, Defendant Rosen authorized or ratified an unpaid two-week (80-hour) suspension of Mr. Chung.

26. Alternatively, to the extent Defendant Rosen did not cause or ratify the actions taken against Mr. Chung, he acted with deliberate indifference to the actions of his executive staff and others who violated Mr. Chung's rights, and failed to investigate and remedy the unlawful actions of his subordinates.

27. Pursuant to his policy, custom, and practice, Defendant Rosen has previously punished other employees who exercised their right to free speech, including, by way of example and without limitation, James Sibley, who was punished by Defendant Rosen when

Mr. Sibley spoke publicly about Defendant Rosen's improper use of administrative leave hours within the Department.[2] On information and belief there are others yet to be identified through discovery.

28. Defendant Rosen's retaliatory policies and practices against employees who exercise their right to free speech is so widespread that it is a custom, policy, or practice of the County. It is well known within the Department that anyone who speaks out against Defendant Rosen, is considered an enemy of the Department, to be ostracized, physically banned from the premises, reassigned to less favorable assignments, and otherwise punished.

## CLAIM FOR RELIEF

### Violation of Right to Free Speech Under U.S. Const., Amend. I

### [42 U.S.C. § 1983]

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28, inclusive.

30. The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech, or of the press." The First Amendment applies to all government organizations in the United States. It applies to state and local governments through operation of the Fourteenth Amendment Due Process Clause.

31. Public employees have the right to be free from government interference in their speech based on the speech's content. Such restrictions are rarely permitted. As Justice Thurgood Marshall explained, the rationale for prohibiting suppression of public employee speech pertaining to matters of public interest is to "ensure that public employers do not use their authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987). A public employee's speech is protected if (1) the speech pertains to a matter of public concern, (2) the employee spoke as a private citizen and not a public employee, and (3) the employee's speech interest outweighs the agency's interest in promoting efficiency and effectiveness. *See Pickering v. Board of Ed. of Township High*

///

---

[2] Part of Mr. Sibley's punishment was also an unwarranted reassignment by Defendant Rosen.

*School Dist. 205, Will County, Illinois*, 391 U.S. 563 (1968); *Eng v. Cooley*, 552 F.3d 1062, 1070-71 (9th Cir. 2009).

32. Mr. Chung's Op-Ed piece pertained to a matter of public concern – ongoing criminal justice reform and violence towards Asian Americans following the COVID-19 pandemic. The Op-Ed did not refer to any investigation, litigation, or adjudicative proceeding, in which Mr. Chung was an active participating lawyer.

33. Mr. Chung was speaking as a private citizen because his Op-Ed piece was not in response to a media inquiry; nor was it part of Mr. Chung's official duties as a Department deputy district attorney to write opinion pieces or provide commentary to local newspapers.

34. Mr. Chung's speech interest (and the public's interest in receiving the well-informed views of government employees engaging in civic discussion) outweighed Defendants' interest in promoting the efficiency and effectiveness of the Department, which in any event was not impaired by the publication of Mr. Chung's Op-Ed.

35. Defendant Rosen, the Department head with final policy-making authority, deprived Mr. Chung of his rights under the First Amendment to the United States Constitution when he punished Mr. Chung for his Op-Ed.

36. Defendant Rosen's intentional actions and failures as the Department head, including but not limited to, his custom, policy, and practice to punish employees who exercise their right to free speech, along with a failure to investigate and remedy unlawful retaliatory actions as alleged above, constitute a custom, policy, or practice of the County and deliberate indifference to Mr. Chung's First Amendment rights. Pursuant to Defendant Rosen and County's custom, policy, or practice, Defendants deprived Mr. Chung of his protected fundamental right to free speech under the First Amendment to the U.S. Constitution.

37. Defendants' adverse employment actions against Mr. Chung were such that a reasonable employee would have found them to be materially adverse and they would have dissuaded a reasonable employee of Defendants from engaging in the protected speech activity.

38. Mr. Chung's speech was a substantial or motivating factor for the adverse employment actions taken against him by Defendants.

39. Defendants acted under color of state law in violating Mr. Chung's rights, privileges, and immunities guaranteed by the First Amendment to the U.S. Constitution.

40. Defendants' actions have caused and continue to cause Mr. Chung substantial loss, including, but not limited to, professional injury, loss of reputation, loss of promotional opportunities, and other employment benefits.  Additionally, Mr. Chung has suffered humiliation, embarrassment, anguish, and severe emotional distress, and has incurred attorneys' fees all to his damage in an amount according to proof.

41. Defendant Rosen's acts, as alleged herein, were done with malice, fraud, oppression, and in reckless disregard of Plaintiff's constitutional rights, justifying an award of punitive damages.

WHEREFORE, plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

1. For general damages, in an amount according to proof;
2. For special damages, in an amount according to proof;
3. For civil penalties to the extent allowed by law;
4. Punitive damages against defendants, as allowed by law;
5. For attorneys' fees, as allowed by law;
6. For costs of suit;
7. For interest as allowed by law;
8. For any other relief as allowed by law, and
9. For such other and further relief as the Court may deem proper.

DATED: March 9, 2022

McMANIS FAULKNER

JAMES MCMANIS
ABIMAEL BASTIDA
CHRISTOPHER ROSARIO

Attorneys for Plaintiff
DANIEL CHUNG

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Amendment VII to the United States Constitution and by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: March 9, 2022

McMANIS FAULKNER

JAMES McMANIS
ABIMAEL BASTIDA
CHRISTOPHER ROSARIO

Attorneys for Plaintiff
DANIEL CHUNG

**EXHIBIT A**

OPINION > COMMENTARY

# Opinion: Criminal justice reforms must protect victims, communities

Shift from incarceration is laudable, but balance is needed to thwart violent crimes



An exterior view of San Quentin State Prison. (Photo by Justin Sullivan/Getty Images)

By DANIEL M. CHUNG |
PUBLISHED: February 14, 2021 at 6:10 a.m. | UPDATED: February 14, 2021 at 6:13 a.m.

I am a proud Asian American, born in Los Angeles and raised in the San Francisco Bay Area. I am also a proud criminal prosecutor, having specialized in felony gun crimes in New York City and domestic violence and violent felonies in Silicon Valley. Like many others, I am heartbroken by the recent surge in violence against Asian Americans, both here in the Bay Area and elsewhere in our country.

Violence against any individual — regardless of race, ethnicity or national origin — is unacceptable. Violence against Asian Americans is unacceptable. As we celebrate Lunar New Year, during an unprecedented second impeachment trial of former President Donald Trump for inciting an insurrection at the U.S. Capitol, we should reflect on the increasing violence in our communities and work together to find common-sense solutions.

Like other states, California is in the midst of criminal justice reform, and "progressive prosecutors" are making sweeping changes in big cities such as San Francisco and Los Angeles. Criminal justice reform is necessary and good. However, it needs to be balanced, to protect victims and communities. Public safety should be paramount. We should not create a revolving door for repeat offenders.

For example, the suspect in the recent Oakland Chinatown attack on a 91-year-old Asian man had two prior felony assault convictions. Under existing California law, this suspect would likely be eligible for mental health diversion, in which all of his charges would be dismissed within two years. How is that justice? The mental health diversion statutory scheme is so loose in California that unless you are a convicted murderer or rapist, you can be eligible for dismissal of all of your charges — including serious and violent felonies — so long as you can identify a mental disorder in the DSM-5, which is not a difficult task.



2/14/2021                              Opinion: Criminal justice reforms must protect victims, communities

There is a growing movement in California to neuter the effects of serious and violent felony convictions ("strikes") and sentencing enhancements. The intentions are good, but it is misguided. For example, state Sen. Nancy Skinner, D-Berkeley, recently introduced SB 81, which would require a court to dismiss an enhancement if the current offense was connected to mental health issues, or if the current offense was connected to prior victimization or childhood trauma, or the firearm used in the current offense was inoperable or unloaded. To the Asian-American man recently robbed at gunpoint by two masked individuals at his Oakland home, what difference does it make if the firearms used were inoperable or unloaded? His fear and trauma were real, and the law should recognize that and punish individuals accordingly.

The shift away from mass incarceration is laudable, but it needs to take into better account the needs and rights of victims. For example, the recently created court-initiated misdemeanor diversion statute empowers judges to divert most defendants accused of misdemeanors. However, this diversion — which results in eventual dismissal of charges, including violent misdemeanors — can take place over the objection of prosecutors. It also does not require judges to hear from and consider the preferences of victims. This is in direct contradiction of the spirit of Marsy's Law and the separation of powers that is the foundation of our government.

To all the Asian Americans and their allies outraged by the recent surge of racism and violence, we need to be more active participants in our government to prevent violence and protect victims and our communities. Although we are a small segment of the total population, we need to amplify our voices so that our legislators, law enforcement leaders and other political and community partners hear us and effect real change. We can't just rely on celebrities to be our voices. We need to be the voice of change. And we need to be present where the decisions are being made.

*Daniel M. Chung is a Santa Clara County Deputy District Attorney.*

Report an error
Policies and Standards
Contact Us

[T] The Trust Project

Tags: **Crime**


# Daniel M. Chung



**SPONSORED CONTENT**

**The All-New Sienna** 🔗

By Saatchi_National_New Car



Take your fun further. The all-new Sienna with available AWD.

**SUBSCRIBE TODAY!**
**ALL ACCESS DIGITAL OFFER FOR JUST 99 CENTS!**

