United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL CHUNG,

          Plaintiff,

   v.

COUNTY OF SANTA CLARA, et al.,

          Defendants.

Case No.  21-cv-07583-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 72

Former deputy district attorney Daniel Chung alleges that his First Amendment rights were violated when he was retaliated against after writing an opinion piece that was published in a local newspaper.  In this third motion to dismiss, defendant County of Santa Clara ("the County") again attacks his 42 U.S.C. § 1983 claim, arguing that he has not adequately alleged *Monell* liability.  I agree with the County that Chung has not plausibly pleaded a longstanding custom or practice, that Rosen had final policymaking authority over employee discipline, or that the County delegated to Rosen such authority.  Accordingly, Chung cannot establish liability under *Monell* and the County's motion is GRANTED with prejudice.

## BACKGROUND

On February 14, 2021, Chung, then a deputy district attorney for Santa Clara County, published an opinion piece in a local newspaper about a "recent surge of racism and violence towards Asian Americans following the COVID-19 pandemic."  Second Am. Compl. ("SAC") [Dkt. No. 70] ¶¶ 1, 16.  The op-ed "discussed California's ongoing criminal justice reform efforts and the violence against Asian Americans in the Bay Area."  *Id.* ¶ 16. [1]

---

[1] The SAC attaches and incorporates by reference the opinion piece.  *See* SAC, Ex. A; *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) ("[a] document is incorporated when its

The piece referenced Chung's experience as a prosecutor generally; he did not specifically mention the County, the Santa Clara District Attorney's Office, or District Attorney Jeffrey Rosen, nor any investigation, litigation, or proceeding in which Chung was actively participating. *Id.* ¶¶ 17-18.  Chung contends that he did not write an italicized statement at the end of the piece that identified Chung as a Santa Clara County deputy district attorney. *Id.* ¶ 17 n.1.

The SAC alleges that Rosen (the other defendant in this case) read the op-ed the morning it was published and "became angry." *Id.* ¶ 20.  That evening, Rosen contacted Chief Assistant District Attorney Jay Boyarsky and "instructed him to punish Chung" by serving him with a discipline letter and sending him to the less-prestigious Mental Health Court, while "making sure everyone in the District Attorney's Office knew Chung was getting transferred." *Id.* ¶¶ 20, 22.

The next business day, February 16, 2021, Chung was disciplined as Rosen had allegedly directed. *Id.* ¶ 22.  He was transferred to Mental Health Court, then Juvenile Justice, another less-prestigious assignment, without any explanation. *Id.*

On April 16, Chung was suspended for 10 days. *Id.* ¶ 23.  The SAC alleges that Rosen was "personally involved" in determining the suspension's length and said he was "comfortable" with 10 days "because he didn't think a letter of discipline would be severe enough." *Id.*

On May 28, 2021, Chung was placed on administrative leave and escorted out of the District Attorney's Office—actions Rosen allegedly "instructed, authorized, or ratified." *Id.* ¶ 24.

Three days later, Rosen allegedly authorized or ratified a "be on the lookout" notice sent to the District Attorney's Office, alerting staff that "DDA Chung is not allowed on County property until further notice" and including his photograph. *Id.* ¶ 25.  Rosen allegedly authorized or ratified a second notice on June 2, 2021, specifying that Chung was "not allowed on County premises occupied by or affiliated with the District Attorney's Office." *Id.* ¶ 26.

Finally, on June 11, Rosen allegedly approved an unpaid, two-week suspension of Chung. *Id.* ¶ 27.

The SAC alleges that the actions taken against Chung were part of Rosen's "policy,

contents are described and the document is 'integral' to the complaint") (citation omitted).

custom, and practice" of punishing employees who "exercised their right to free speech." *Id*. ¶ 29.
It alleges that another employee, James Sibley, was "punished when he spoke publicly about
Rosen's improper use of administrative leave." *Id*. It also accuses Rosen and Boyarsky of
"employ[ing] a number of tactics . . . to punish lawyers who displeased them" while
"overlook[ing] misconduct by their favorites." *Id*. The SAC further alleges that Rosen's
"retaliatory policies and practices against employees who exercise their right to free speech is so
widespread that it is a custom, policy, or practice of the County." *Id*. ¶ 30.

Chung filed this lawsuit on September 28, 2021, bringing a section 1983 claim against the
County and Rosen for allegedly violating his First Amendment rights. *See* Dkt. No. 1. On
February 24, 2022, I granted the defendants' first motion to dismiss, holding that Chung did not
expressly plead that he was speaking as a private citizen nor adequately allege liability against
either defendant. *See* Dkt. No. 37.

After Chung filed an amended complaint, I granted the defendants' second motion to
dismiss only in part. *See* Order Granting in Part and Denying in Part Mot. to Dismiss ("Second
MTD Order") [Dkt. No. 69] 1:13-23. I held that although Chung had sufficiently alleged that he
spoke as a private citizen, he had not sufficiently pleaded the claim against either defendant. *Id*.
Relevant to the instant motion, I held that Chung had not shown a custom, policy, or practice to
establish *Monell* liability against the County. *Id*. I again granted him leave to amend. *Id*.

Chung filed his SAC on July 29, 2022, which the County moved to dismiss on August 11,
2022. Dkt. Nos. 70, 72. I heard arguments from both parties on September 21, 2022.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the
plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff
pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for
the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There
must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts

3

do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Before turning to the parties' arguments, it is worth making two points. First, the parties do not contest (at least on this motion) whether Chung spoke as a private citizen or public employee in the op-ed. That issue was litigated on the last motion to dismiss, where I determined that Chung had sufficiently pleaded that he spoke as a private citizen rather than a public employee. *See* Second MTD Order at 13:13-16. I need not retread already-covered ground; I mention this only to explain in part why the question now before me is relatively narrow.

Second, unlike the prior motions to dismiss, only the County brought the instant motion. *See* Dkt. Nos. 20, 48, 72. Accordingly, my focus is on whether Chung has adequately alleged a section 1983 claim against the County—not against Rosen.

Local governments may not be sued under section 1983 for injuries inflicted solely by their employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, municipalities may be held liable under section 1983 when an official policy or custom causes a constitutional violation. *Id.* at 690-91. A plaintiff must plausibly plead the following to proceed

with a *Monell* claim: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom, or practice; (3) that the policy, custom, or practice amounted to deliberate indifference to [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019) (citations omitted). A plaintiff must allege sufficient facts regarding the nature of the alleged policy, custom, or practice to allow the defendant to effectively defend itself; merely alleging that one exists does not suffice. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636-68 (9th Cir. 2012).

"There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edits or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation and quotation marks omitted).

## I.   LONGSTANDING PRACTICE OR CUSTOM

For a practice or custom to function as an entity's standard operating procedure, it "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy'." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (citations omitted). "[O]ne or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality." *J.M. by and through Rodriguez v. Cty. of Stanislaus*, No. 18-CV-01034, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018).

The County first argues that Chung has not plausibly pleaded a longstanding County custom or practice. Mot. to Dismiss ("MTD") [Dkt. No. 72] 4:21-22. It notes that in my prior

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Order, I held that Chung's attempts to show a longstanding custom or practice based on two

2    alleged incidents of retaliation by Rosen—against Chung and Sibley—were insufficient both in

3    number and in consistency.  *See id*. at 5:9-19; Second MTD Order at 15:14-25.  The County also

4    points to a second portion of my earlier decision, which was that Chung's assertions about what

5    was "well known" within the District Attorney's Office were "too conclusory to save his

6    argument."  MTD at 5:20-24; Second MTD Order at 15:24-25.

7            The only way the SAC supplements these allegations is by asserting that Rosen and

8    Boyarsky "employed a number of tactics which they used to punish lawyers who displeased them"

9    yet "overlooked misconduct by their favorites," and listing the names of seven attorneys between

10   both categories.  *Compare* SAC ¶¶ 29-30 *with* First Am. Compl. ("FAC") [Dkt. No. 41] ¶¶ 27-28.

11   The County argues that this does not provide any detail about any incidents involving these

12   attorneys to establish that they were sufficiently similar to and close in time to constitute a

13   longstanding practice or custom.  MTD at 7:8-23.  Specifically, the County contends that the SAC

14   does not allege that Rosen "retaliated against, disciplined, or rewarded any of these individuals

15   because of any speech" or did so in the ways underlying Chung's claim.  *Id*.

16           Chung does not respond to this argument in his opposition, which makes no mention of

17   any longstanding practice or custom.  *See generally* Oppo. [Dkt. No. 75].  That alone supports

18   dismissal of any *Monell* claim premised on this theory of liability.  *See Henry v. Napa Valley*

19   *Unified*, No. 16-CV-04021-MEJ, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016) ("Typically,

20   failure to address in an opposition arguments raised in an opening motion . . . constitutes waiver or

21   concession of the argument.").  And regardless, the new allegations in the SAC do not plausibly

22   show a longstanding practice or custom by the County.  The SAC alleges that Rosen and Boyarsky

23   "employed a number of tactics which they used to punish" five attorneys who "displeased them,"

24   but provides no details on why or how those attorneys were punished, let alone how that alleged

25   punishment compared to Chung's.  *See* SAC ¶ 29.  There is not enough detail to infer a practice or

26   custom based on the similarity or timing of the alleged discipline.  *See J.M.*, 2018 WL 5879725, at

27   *5.  Without specific information about any discipline of the other attorneys, Chung has not

28   adequately alleged a practice or custom of punishing District Attorney's Office employees for

their speech.  To the extent that his *Monell* claim is premised on a longstanding practice or custom, it cannot proceed.

## II.  FINAL POLICYMAKING AUTHORITY

"Whether a particular official has final policy-making authority is a question of state law," determined by the judge, not the jury.  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992); *Zografos v. City & Cty. of San Francisco*, No. C-05-3881-PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006).  The court must first "identify the particular area or issue for which the official is alleged to be the final policymaker."  *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (citation omitted).  Next, the court must "analyze state law to discern the official's actual function with respect to that particular area or issue."  *Id*.  In doing so, courts look to state laws, county charters and codes, and city charters.  *See Avenmarg v. Humboldt Cty.*, No. 19-CV-05891-RMI, 2020 WL 4464876, at *6-7 (N.D. Cal. Aug. 4, 2020) (collecting cases).  The court cannot assume that policymaking authority "lies somewhere other than where the applicable law purports to put it."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

Some level of independence or discretion does not automatically transform an employee into a final policymaker.  "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of superiors."  *Zografos*, 2006 WL 3699552, at *16 (citing *Praprotnik*, 485 U.S. at 126-28); *see also Lopez v. City & Cty. of San Francisco*, No. 12-CV-06523-MEJ, 2014 WL 2943417, at *14 (N.D. Cal. June 30, 2014) ("the fact that a city employee has some level of independent decision-making power does not render him a final policymaker for purposes of municipal liability").

I previously held that although Rosen had some level of independent decision-making power over appointing, suspending, or removing employees from the District Attorney's Office, he was not the final policymaker for purposes of municipal liability.  Second MTD Order at 19:14-24.  I noted that although the Santa Clara County Ordinance Code grants Rosen "power to appoint, suspend or remove employees," that authority to hire and fire is not absolute, as Rosen's decisions can be appealed to and overturned by the Personnel Board, under section 708 of the County

1    Charter. *Id*. at 18:3-8, 19:14-16.  Moreover, section 704 of the County Charter indicates that the

2    Board of Supervisors sets the County's employment policy.  *Id*. at 19:14-24.  Similar to other

3    courts, I drew a distinction between an official's discretionary hiring and firing authority (which

4    courts have held is not enough to establish municipal liability) and responsibility for establishing

5    employment policy (which courts have held is).  *See id*. at 18:21-24 (citing *Gillette*, 979 F.2d at

6    1350; *Schiff v. City & Cty. of San Francisco*, 816 F. Supp. 2d 798, 813 (N.D. Cal. 2011)).

7         The County now argues that the SAC "does not add facts that plausibly dispute the

8    unambiguous provisions of the County Charter and Ordinance Code or that otherwise plausibly

9    show" that Rosen was the final policymaker for the alleged disciplinary decisions.  MTD at 8:20-

10   23.  It contends that Chung's new allegation—that Rosen "has testified under oath that he

11   'oversees the operations of the District Attorney's Office . . .'" and that he "set[s] the policy and

12   direction for the office"—is misleading, as Rosen sets "prosecutorial policy and direction" but

13   does not serve as the final policymaker on employment disciplinary decisions.  *Id*. at 8:23-9:2

14   (citing SAC ¶ 37).  Even if taken as true, the County argues, Chung's allegation "does not

15   overcome the dispositive language of the County Charter and Ordinance Code" showing that

16   Rosen is not the final policymaker regarding disciplinary decisions.  *Id*. at 9:3-14.

17        In response, Chung points to Paragraph 37 of the SAC, along with allegations that Rosen is

18   the "County district attorney and department head," "has, and at all relevant times had, the

19   exclusive power to appoint, suspend, or remove" department employees, and "has final

20   policymaking authority."  Oppo. at 3:22-4:1 (citing SAC ¶¶ 8-9, 37).

21        Most of these allegations carry over from the FAC.  *Compare* SAC ¶¶ 8-9, 37 *with* FAC ¶¶

22   8-9, 35.  The SAC adds a new allegation about Rosen's testimony, but I agree with the County that

23   even accepting this as true, it does not show that Rosen had final policymaking authority with

24   respect to disciplinary actions like those at issue.  As stated in my previous Order, the County's

25   governing documents show that although Rosen had some authority to appoint, suspend, or

26   remove employees, he was not the final policymaker regarding employment disciplinary

27   decisions; his decisions could be appealed and overturned, and the Board of Supervisors appeared

28   to set employment policy.  Second MTD Order at 19:14-24.  The SAC does not raise any new

8

allegations that sufficiently rebut this. *See generally* SAC.

Nor do Chung's allegations about Boyarsky's role in the disciplinary process save this theory of liability. He argues in his opposition that the SAC "states facts sufficient to show that Rosen *and* Boyarsky were County policymakers regarding the discipline of department attorneys." Oppo. at 3:22-23 (emphasis added). But a "County policymaker" is not necessarily the "final policymaker." And the sparse allegations that Boyarsky was the chief assistant district attorney and that "it was the practice of the District Attorney's Office for Mr. Boyarsky to handle disciplinary matters" does not establish that he was the final policymaker. *See* SAC ¶¶ 14, 23.

In sum, Chung has not sufficiently alleged that either Rosen or Boyarsky served as the final policymakers regarding discipline so as to establish *Monell* liability.

## III.   DELEGATION

Chung's opposition focuses on the third source of *Monell* liability: an official with final policymaking authority (the County) delegated to a subordinate (Rosen) the authority to discipline District Attorney's Office employees. Oppo. at 4:8-7:11. Then, he contends, Rosen "delegated his disciplinary authority in part to Boyarsky" by telling him to serve Chung with a discipline letter and transfer him to a new assignment. *Id.* at 4:4-7, 7:7-8 ("The County delegated its disciplinary authority to Rosen, and Rosen in turn delegated his authority to Boyarsky.").

A plaintiff can also show a policy or custom for purposes of *Monell* "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti*, 409 F.3d at 1147 (citation omitted). "An official may be found to have been delegated final policymaking authority where the official's discretionary decision is not constrained by policies not of that official's making and not subject to review by the municipality's authorized policy makers." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 986 (9th Cir. 2002) (citations and internal modifications omitted).

As an initial matter, the SAC does not expressly allege any form of delegation, either by the County to Rosen or by Rosen to Boyarsky. *See generally* SAC. Although the SAC asserts that Rosen "has, and at all relevant had, final policymaking authority," the words word "delegate" or "delegation" appear nowhere within. *See id.* ¶¶ 9-10, 37.

United States District Court
Northern District of California

1

The SAC is also void of substantive allegations amounting to any delegation of authority.
It alleges that Rosen has final policymaking authority "[a]s the department head." *Id.* ¶ 37. But it
does not allege where that authority is derived from—i.e., from the County. *See id.* Instead,
Chung identifies in his opposition a series of documents (the County Charter, County Ordinances,
and Collective Bargaining Agreement between the County and Santa Clara County Government
Attorneys Association) that he contends shows that "the County delegated to the District Attorney
the authority to discipline Department attorneys."[2] *See* Oppo. at 4:10-19. But the SAC itself does
not mention these documents. As I noted in my first Order granting the defendants' motion to
dismiss, "a deficient complaint cannot be remedied via allegations added in the opposition." *See*
Dkt. No. 37 (citing *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020)).

Even assuming that the SAC alleged delegation based on these documents, the documents
do not plausibly show that the County delegated final policymaking authority over discipline to
Rosen. Chung first points to section 502 of the County Charter, which provides that "County
officers and department heads shall have the power to appoint, supervise, suspend, or remove all
persons employed under their respective administrations subject to the provisions of Article VII of
this Charter." Oppo. at 4:17-22 (citing Pl.'s RJN, Ex. B). He then notes that the Ordinance Code
states that "[s]ubject to the provisions of the Charter and this Code, the District Attorney shall
have power to appoint, suspend, or remove all assistants, deputies, clerks, and other employees
necessary to conduct the work of the Department." *Id.* at 4:23-26 (citing Pl.'s RJN, Ex. C). And,
Chung notes, section A25-310 of the Ordinance Code states that an "appointing authority" such as
the district attorney "may suspend, demote, or dismiss any employee subject to section 708 of the
Charter covering appeal rights of employees with permanent status." *Id.* at 4:26-5:5 (citing Pl.'s

---

[2] Chung requests that I take notice of sections of the Santa Clara County Charter and Ordinance
Code, the Santa Clara County Board of Supervisors Policy Manual, and the Collective Bargaining
Agreement. Pl.'s RJN [Dkt. No. 75-1] Exs. A-J. I will do so, as the facts within these exhibits can
be accurately and readily determined from sources whose accuracy cannot reasonably be
questioned. *See* Fed. R. Evid. 201(b)(2); Second MTD Order at 5:23-6:13 (taking judicial notice
of the County Charter and Ordinance Code). For the same reasons, I take notice of the excerpts of
the County Charter and Ordinance Code requested by the County. Def.'s RJN [Dkt. No. 76-1]
Exs. A, C. I also take notice of an opposition Chung filed in a pending Santa Clara County
Superior Court case, as courts "may take judicial notice of court filings." *See id.*, Ex. B; *Reyn's
Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

1   RJN, Exs. D, E).

2          Relying on *Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004), Chung argues that any limitations

3   imposed on Rosen by the above-cited provisions—i.e., that "[t]he District Attorney must follow

4   the law"—do not insulate the County from liability. *See id*. at 5:8-20. In *Lytle*, he contends, the

5   Ninth Circuit held that a school district regulation that delegated to the superintendent "all powers

6   necessary and proper for the operation of the district which are not inconsistent with law" did not

7   absolve the district of liability. *See id*.; *see also Lytle*, 382 F.3d at 984-85 ("A general statement

8   by a school board or board of trustees that a superintendent is not authorized to violate the law,

9   without more, cannot be enough to insulate the school district from liability.").

10         Chung also heavily relies on *Lytle* for his second argument: that although the discipline of

11  a District Attorney's Office employee "may ultimately be reviewed by persons outside the

12  Department, that does not divest Rosen and Boyarsky of their final policymaking authority."

13  Oppo. at 6:18-19. He notes that in *Lytle*, the Ninth Circuit rejected the school district's argument

14  that the superintendent and assistant superintendent "were not final policymakers because their

15  employment-related decisions could be reviewed by the Board [of Trustees] for consistency with

16  district policy and rules, or by an arbitrator under the grievance process established by the

17  collective bargaining agreement between the teacher's union and the district." *Id*. at 6:19-25

18  (citing *Lytle*, 382 F.3d at 985). He then draws parallels to the Collective Bargaining Agreement,

19  which similarly allows a disciplined attorney to file a grievance that can be reviewed either by the

20  director of the Labor Relations Department or an impartial arbitrator. *See id*. at 6:1-7:5 (citing

21  Pl.'s RJN, Ex. I at 23-26). This, he said, is akin to the situation in *Lytle*, where the court held that

22  just because "someone outside of the district"—specifically, an independent arbitrator—"may

23  reverse the district official's decision does not mean that the official does not speak for the district

24  when he or she initially makes that decision." *See id*. (citing *Lytle*, 382 F.3d at 985-86).

25         But there is a key distinction between *Lytle* and the matter at hand. In *Lytle*, the delegation

26  of authority was express and absolute. The court wrote:

27              The record reflects that the Board did not review discipline of individual employees
28              such as Lytle, and did not retain the authority to review such discipline. Indeed, the

United States District Court
Northern District of California

> Board had actively renounced its authority over employee discipline. District Policy 1213, quoted above, states explicitly, "The Board of School Trustees does not have the authority to discipline employees." . . . That [the assistant superintendent]'s disciplinary decisions were not subject to review by anyone within the district indicates that he was a final policymaker.

*Lytle*, 382 F.3d at 985.

None of the provisions proffered by Chung show that the County renounced its authority over employee discipline, as did the board in *Lytle*. Rather, section 708 of the County Charter states that an employee may appeal his suspension, demotion, or removal to the County Personnel Board, which will make the "final and conclusive" "findings, conclusions, and decisions" regarding such discipline. *See* Pl.'s RJN, Ex. J. In other words, unlike in *Lytle*, the County retained the authority to review discipline. *See* 382 F.3d at 986 ("In determining who was a final policymaker for the District, we focus on whether the official's decisions were subject to review by the *District's* authorized policymakers.") (emphasis in original).

Chung's choice to have his discipline reviewed by an arbitrator, as permitted by both the County Charter and Collective Bargaining Agreement, does not render Rosen a final policymaker for purposes of *Monell* liability. As the County notes, the focus in *Lytle* was whether employee discipline was "subject to review" by the district, not whether it was actually reviewed by the district. Reply [Dkt. No. 76] 10:5-26; *see also Lytle*, 382 F.3d at 985-86. Commonsense also supports this. If employees were able to impose *Monell* liability upon the County simply by choosing to arbitrate their grievances via an alternative process approved by the County, there would be no limit to the County's liability.

I also see a distinction between any limitations to the delegation in *Lytle* and the provisions at issue. In *Lytle*, the Ninth Circuit held that "[a] general statement by a school board or board of trustees that a superintendent is not authorized to violate the law, without more, cannot be enough to insulate the school district from liability." 382 F.3d at 985. But the restraints here—that the district attorney has the power to appoint, suspend, or remove employees "subject to the provisions of the Charter and this Code"—does not merely instruct him not to violate the law. *See* Pl.'s RJN, Ex. C. Rather, section A25-300 of the Ordinance Code expressly limits an appointing authority's power to suspend, demote, or dismiss employees "subject to section 708 of the

United States District Court
Northern District of California

Charter"—the provision that outlines an employee's appeal rights. *See id.*, Ex. D.  Read together, these provisions curb the district attorney's power to discipline his employees, subject to the County's review.

This is the same issue that sunk Chung's previous argument (made on the last motion to dismiss) that Rosen had final policymaking authority.  It would make sense that a district attorney would have final policymaking authority over discipline in her office.  But the County Charter and Ordinance Code, read together, indicate otherwise.  Neither the provisions that Chung now proffers, nor the Collective Bargaining Agreement, compel a different conclusion.  These documents indicate that the County delegated some level of authority over employee discipline to Rosen.  But as the Ninth Circuit stated in *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999), "delegating discretion is not equivalent to delegating final policymaking authority."

To the extent that Chung argues that Rosen delegated his final policymaking authority to Boyarsky, that theory also fails.  Chung has not adequately shown that any such authority was delegated to Rosen in the first place.

Taken together, the SAC lacks sufficient allegations showing that any delegation occurred.  Chung has not adequately alleged any theory of liability against the County, which warrants dismissing the *Monell* claim against the County.

## CONCLUSION

The County's motion to dismiss is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: October 11, 2022

William H. Orrick
United States District Judge