UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CHUNG,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY F. ROSEN,<br><br>    Defendant. | Case No. 21-cv-07583-AMO<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 92 |

Defendant Jeffrey F. Rosen's Motion for Summary Judgment was heard before this Court on June 15, 2023. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Defendant's Motion, for the following reasons.

**BACKGROUND**

**A.  Factual Background**

This case's remaining claims involve the actions taken by the Santa Clara County District Attorney, Jeffrey F. Rosen ("DA Rosen") following the publication of an opinion piece by Plaintiff Daniel Chung, who was then a Deputy District Attorney. Chung alleges that DA Rosen and his office retaliated against him for publishing an unauthorized opinion piece on criminal justice issues, and Chung argues that such retaliation violated his First Amendment right to freedom of speech.

**1.  The Op-Ed**

On February 11, 2021, Chung drafted an opinion-editorial (the "op-ed") on work time, on his work computer, and sent it to The Mercury News for publication from his work e-mail. Brandwagjn Decl., Ex. H (Dkt. 92-1 at 1197); *see also* Ex. C at 358:11-360:9, 363:17-25 (Dkt. 92-

1 at 397-99, 402). Chung sought publication of this op-ed by sending emails during normal working hours to several email addresses at The Mercury News. Brandwagjn Decl., Ex. D (Dkt. 92-1 at 536-43). In his initial email, Plaintiff included a line that read, "This only expresses my personal opinion and not the views of my office," but he did not include any such purported disclaimer in the body of his article or in subsequent communications with The Mercury News. Brandwagjn Decl., Ex. C at 367:6-368:1 (Dkt. 92-1 at 406-07). Plaintiff did not seek the authorization or approval of DA Rosen or anyone else at the District Attorney's Office ("DAO") before writing, sending, or publishing the op-ed. Brandwagjn Decl., Ex. C at 366:16-22, 376:24-377:6 (Dkt. 92-1 at 406, 415-16); Ex. H at 7 (Dkt. 92-1 at 1198).

On Sunday, February 14, 2021, The Mercury News published Chung's op-ed under the title, "Criminal justice reforms must protect victims, communities." Brandwagjn Decl., Ex. D (Dkt. 92-1 at 554-55). The op-ed's byline was, "By Daniel M. Chung." *Id.* Chung's op-ed ended with an italicized tagline that read, "Daniel M. Chung is a Santa Clara County deputy district attorney." *Id.*; Ex. H at 7 (Dkt. 92-1 at 1198). It included no disclaimer that these were Chung's personal views as opposed to those of DA Rosen or DAO. *Id.* In his op-ed, Chung voiced some opinions contrary to the public positions of DA Rosen and the DAO. *Id.* Plaintiff discussed "criminal justice reform," he described pending "misguided" criminal justice reform legislation introduced by State Senator Nancy Skinner, and he criticized mental health diversion programs. Brandwagjn Decl., Ex. D (Dkt. 92-1 at 554-55). Chung encouraged readers to "be more active participants in our government to prevent violence and protect victims and our communities . . . to amplify our voices so that our legislators, law enforcement leaders and other political and community partners hear us and effect real change." *Id.* When Chung wrote and published the February 14 Op-Ed, his duties as a deputy district attorney did not include writing opinion pieces or providing general social commentary to local newspapers. *See* Chung Decl. ¶ 22 (Dkt. 96-1 at 4).

### 2. The Aftermath / Discipline

On the morning of Tuesday, February 16, 2021, the first business day following the publication of the February 14 Op-Ed, Chung was reassigned to the Mental Health Court effective

2

1  March 1.  Brandwagjn Decl., Ex. H at 10 (Dkt. 92-1 at 1201).  The next day, another office-wide

2  Notice of Assignment and Location Change advised that Chung would be assigned to Juvenile

3  Justice, rather than the Mental Health Court, effective February 24.  *Id.*; Chung Decl. ¶ 41 (Dkt.

4  96-1 at 7).

5  Also on February 16, 2021, Assistant District Attorney ("ADA") Scott Tsui issued Chung

6  a notice that an administrative investigation of his conduct had begun.  Chung Decl. ¶ 36 (Dkt. 96-

7  1 at 6).  ADA Tsui subsequently issued a Notice of Intended Discipline summarizing his

8  administrative investigation and recommending a 10-day suspension for Plaintiff's violations of

9  DAO and County policies.  Brandwagjn Decl., Ex. D (Dkt. 92-1 at 529-35); Ex. H at 12 (Dkt. 92-1

10  at 1203).  ADA Tsui concluded that his "investigation revealed that [Plaintiff] engaged in personal

11  political activities during work hours using office resources" and "used [his] official title of

12  Deputy District Attorney of Santa Clara County to advance such activities without authorization."

13  Brandwagjn Decl., Ex. D (Dkt. 92-1 at 532).

14  On May 3, 2021, Chung and his union-appointed attorney, Andrew Ganz, participated in a

15  *Skelly* conference with ADA Terry Harman to review the disciplinary action.  Brandwagjn Decl.,

16  Ex. D at JX G (Dkt. 92-1 at 615); Ex. H at 13 (Dkt. 92-1 at 1204).  On June 11, 2021, ADA

17  Harman authored a Notice of Final Disciplinary Action.  Brandwagjn Decl., Ex. D at JX G (Dkt.

18  92-1 at 611-20); Ex. H at 13-14 (Dkt. 92-1 at 1204-05).  ADA Harman upheld the 10-day

19  suspension recommended by ADA Tsui.  *Id.* (Dkt. 92-1 at 619).

20  **3.   Appeal of Discipline / Arbitration**

21  Under Section 708 of the County Charter, Chung had the option to appeal his suspension,

22  like any other disciplinary decision, by (1) "hearing before the Personnel Board" or (2) "an

23  alternate hearing procedure" upon which the "Board of Supervisors and a recognized employee

24  organization may agree."  Brandwagjn Decl., Ex. D (Dkt. 92-1 at 619-20).  The Memorandum of

25  Agreement between the County of Santa Clara and the Government Attorneys Association

26  ("Collective Bargaining Agreement" or "CBA") governed the grievance procedures for deputy

27  district attorneys in Santa Clara County.  Plaintiff's Request for Judicial Notice ("RJN"), Ex. A

28  (Dkt. 96-2 at 6-47).  The CBA provided, "No matter other than a grievance that is an alleged

3

1  violation of a specific provision(s) as written and submitted in the formal grievance may be
2  reviewed on the merits by an arbitrator." *Id.*, Ex. A § 23.6(b)(4) (Dkt. 96-2 at 35). On June 25,
3  2021, on Chung's behalf, his union, the Government Attorneys Association ("GAA"), appealed
4  the suspension via the alternate arbitration procedure pursuant to the County Charter and the CBA.
5  RJN, Ex. A (Dkt. 96-2 at 7-47).

6        The GAA and the County mutually selected arbitrator Alexander Cohn to consider the
7  appeal, and he held a Zoom hearing on December 14 and 15, 2021. Brandwagjn Decl., Ex. H at 1
8  (Dkt. 92-1 at 1192). The parties were each represented by counsel, who made opening statements,
9  presented argument, and examined witnesses. *Id.* at 2 (Dkt. 92-1 at 1193). Seven witnesses,
10 including Chung and DA Rosen, testified live and under oath. Brandwagjn Decl., Exs. B, C (Dkt.
11 92-1 at 7-526). In addition, the arbitrator admitted 14 joint exhibits, plus 12 separate GAA
12 exhibits – totaling 586 pages – into evidence. Brandwagjn Decl., Exs. D, E (Dkt. 92-1 at 527-
13 695). All proceedings were transcribed by a certified court reporter. Brandwagjn Decl., Exs. B, C
14 (Dkt. 92-1 at 7-526). In the arbitrator's words, "[t]he parties were afforded full opportunity for the
15 examination and cross-examination of witnesses, the introduction of relevant exhibits, and for
16 closing argument." Brandwagjn Decl., Ex. H at 1 (Dkt. 92-1 at 1192).

17       On March 1, 2021, the parties submitted lengthy post-hearing briefs with the benefit of
18 significant time, the transcribed testimony, and the documentary evidence. Brandwagjn Decl.,
19 Exs. F, G (Dkt. 92-1 at 1113-90). Pertinent here, both sides argued the merits of Chung's claim
20 that DA Rosen and the County retaliated against him for exercising his alleged First Amendment
21 free speech rights in his February 14, 2021 op-ed. Brandwagjn Decl., Ex. F at 20-24, Ex. G at 35-
22 42 (Dkt. 92-1 at 1137-41, 1182-89).

23       In the arbitration, the County sought to exclude all evidence regarding Chung's First
24 Amendment retaliation claim because arbitration was not the appropriate forum for that claim,
25 arguing that such a claim was properly within the jurisdiction of this Court. Throughout the
26 arbitration briefing, the County repeatedly argued that Chung's First Amendment claim was not an
27 issue in the arbitration. Brandwagjn Decl., Ex. G at 31 (Dkt. 92-1 at 1178) (*see, e.g.*, heading
28 titled "Chung's First Amendment Claim Is Not An Issue in this Arbitration").

On March 28, 2021, Arbitrator Cohn issued a 40-page Opinion and Award ("Cohn Award"). Brandwagjn Decl., Ex. H (Dkt. 92-1 at 1226-65). Cohn found just cause for discipline against Chung but reduced the suspension from 10 working days to five. *Id.* at 39-40 (Dkt. 92-1 at 1264-65). The arbitrator expressly considered Chung's claim that he was retaliated against for exercising his First Amendment free speech rights, finding that "when the matter at issue is just cause, that standard allows [the arbitrator] to address relevant external law" and "First Amendment questions may or may not play a role in whether there is cause (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that discipline." *Id.* at 37, n.33 (Dkt. 92-1 at 1262). The Cohn Award acknowledged the County's argument about litigation of First Amendment issues, summarizing the County's position as follows:

> [Chung's] arguments about the First Amendment have no place in this proceeding. This would usurp the authority of the US District Court for the Northern District of California, which has jurisdiction of [Chung's] pending claim. Under Section 23.6, the Arbitrator's authority is limited to considering violations of the specific provisions of the MOA as set out in the grievance. The issues framed are a just cause, not a constitutional analysis. Consistent with the issues framed by the Parties, the Arbitrator precluded any evidence on the First Amendment issues, stating "I'm going to limit the First Amendment issues to argument only. I don't need any evidence on First Amendment issues in this particular proceeding." Here, [Chung] has filed an action in US District Court in Case No. 5:21-CV-07583-WHO, Dkt. 1 (Complaint.) He cannot get two bites of the apple.

*Id.* at 28-29 (Dkt. 92-1 at 1253-54). The Cohn Award justified the exclusion of evidence about First Amendment issues by explaining that "[t]he Court and the Arbitrator serve different functions with the latter resolving the just cause issue. The Court – knowing this proceeding is informal without discovery and barely enforceable evidentiary rules – will decide what weight, if any to give the Arbitrator's finding if the Award is offered in evidence." *Id.* at 37, n.33 (Dkt. 92-1 at 1262); *see also* Dkt. 92-1 at 1223 (where the Superior Court, confirming the Cohn Award, wrote, "the arbitration focused on whether there was just cause to suspend Respondent Chung (without pay) for ten days.").

### 4. Confirmation of Arbitration Award

On June 14, 2022, the County filed a petition to confirm the Cohn Award in the Superior

1  Court of Santa Clara County. The County filed an amended petition on June 28, 2022.

2  Brandwagjn Decl., Ex. I (Dkt. 92-1 at 1267). On September 14, 2022, the Superior Court issued

3  an Order confirming the Cohn Award. RJN, Ex. J (Dkt. 96-2 at 221-23). In its order, the Superior

4  Court adopted the County's concession that "[c]onfirmation of the award in no way limits the

5  claimed damages in the federal lawsuit beyond the one week of salary that was the subject of the

6  award," and reiterated that "Petitioner [County] acknowledges that 'all losses,' referenced by the

7  Arbitrator does not encompass reputational or other damages that Respondent is seeking in

8  Federal Court and there would be no collateral estoppel effect to limit the damages sought in the

9  federal case." RJN, Ex. J at 2-3 (Dkt. 96-2 at 222-23).

## B.   Procedural Background

Plaintiff filed this action on September 29, 2021, against the County and DA Rosen. Dkt. 1. On October 11, 2022, the Court dismissed the County without leave to amend. Dkt. 82. In the operative Second Amended Complaint, Chung alleges that DA Rosen is personally liable, in his individual capacity, for violating Section 1983 by "wrongfully disciplin[ing]" and "depriv[ing] Chung of his rights under the First Amendment . . . when he punished Mr. Chung for his [February 14] Op-Ed." Dkt. 70 at ¶¶ 21, 37. Chung alleges that DA Rosen's retaliation included: reassignments (*id.* at ¶ 22); a suspension (*id.* at ¶23), being placed on administrative leave more than three months later (*id.* at ¶ 24); and the issuance of security alerts, also more than three months after the op-ed (*id.* At ¶¶ 25-26). He also alleges that these acts are part of Rosen's singular "policy, custom, and practice" to "punish[] other employees who exercised their right to free speech . . ." *Id.* at ¶ 29; *see also id.* at ¶¶ 30-43. DA Rosen filed his Answer on August 11, 2022, denying Chung's allegations of retaliation. Dkt. 73.

Rosen now moves for an order granting summary judgment in his favor on the remaining cause of action, asserting that there is no genuine dispute as to any material fact and DA Rosen is entitled to judgment as a matter of law on the Section 1983 claim. Dkt. 92. Chung asks the Court to deny the motion, arguing that DA Rosen is judicially estopped from arguing that the First Amendment claim was litigated in the arbitration and that, in any case, res judicata does not apply to bar his remaining claim. Dkt. 96. In support of his opposition brief, Chung submits a request

1  for judicial notice. Dkt. 96-2. The request for judicial notice was unopposed, and the Court
2  granted the request on the record at the June 15, 2023 hearing.

**DISCUSSION**

**A.  Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Once the burden shifts to the non-moving party, that party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A court's function on a summary judgment motion is not to make credibility

determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631. A court's obligation to view evidence in the light most favorable to the non-movant does not, however, require it to ignore undisputed evidence produced by the movant. *See L.F. v. Lake Wash. Sch. Dist.*, 947 F.3d 621, 625 (9th Cir. 2020). Further, it is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). A party opposing summary judgment must identify with reasonable particularity the evidence that precludes summary judgment. *Id.*; *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

**B.     Analysis**

DA Rosen brings this motion for summary judgment on the ground that the doctrines of res judicata and collateral estoppel prevent Chung from asserting his Section 1983 claim in this action, because the same facts and issues giving rise to the claim have already been litigated and finally determined as part of the administrative grievance procedure and arbitration. Chung opposes the motion for summary judgment based in part on the doctrine of judicial estoppel. Chung argues that DA Rosen and the County are estopped from arguing that res judicata bars his First Amendment claims because the County earlier argued that the merits of the First Amendment claims could not be resolved in the arbitration proceedings related to Chung's suspension from employment.

The Court first takes up whether DA Rosen is judicially estopped from advancing the defense of res judicata before reaching the question of whether res judicata applies to bar Chung's claims.

**1.     Judicial Estoppel**

"Where a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749. The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Federal law governs the application of judicial estoppel in federal courts. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012).

"Although judicial estoppel is probably not reducible to any general formulation of principle, . . . several factors typically inform the decision whether to apply the doctrine in a particular case." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (quoting *New Hampshire*, 532 U.S. at 750-51 (internal quotation marks omitted)). These factors include: (1) whether the party's later position was clearly inconsistent with its earlier position; (2) whether the party had succeeded in persuading the court to accept its earlier position, such that accepting an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party asserting an inconsistent position would derive an unfair advantage if not estopped. *New Hampshire*, 532 U.S. at 750-51. These factors are not "inflexible prerequisites" or as an "exhaustive formula for determining the applicability of judicial estoppel," as other considerations may "inform the doctrine's application in specific factual contexts." *Id.* at 751.

Chung argues that Rosen should be judicially estopped from arguing to this Court that res judicata applies to preclude the First Amendment retaliation claim in this case. Chung contends that (1) DA Rosen and the County are in privity for judicial estoppel purposes such that DA Rosen may not adopt a position contrary to the County's earlier, successful legal argument, and (2) DA Rosen's present argument that the First Amendment claim was already fully litigated, discussed

1  more in depth below, is inconsistent with the County's earlier argument that the merits of the First
2  Amendment retaliation claim should be excluded from consideration in the arbitration.

3  Rosen counters that there is no privity for purposes of judicial estoppel because Chung's
4  repeated attempt to equate DA Rosen with the County runs counter to Judge Orrick's rulings
5  earlier in the case. *See* Dkt. 69 at 15-19; Dkt. 82 at 7-11 (rejecting Plaintiff's *Monell* liability
6  theory based on his allegation that DA Rosen is a "department head"). Further, DA Rosen notes,
7  Chung cites no case in which a county and district attorney were found to be in privity for judicial
8  estoppel purposes. DA Rosen additionally reasons that judicial estoppel does not apply because
9  the County was unsuccessful in convincing the Arbitrator not to consider the First Amendment
10 claim in the arbitration proceedings. Rather, Arbitrator Cohn: (i) summarized both the County's
11 jurisdictional objection and its alternative substantive showing "[w]ithout waiver of this defense"
12 (Dkt. 92-1 at 1253-54); (ii) found "that, when the matter at issue is just cause, the standard allows
13 him to address relevant external law," including "First Amendment questions" (*id.* at 1262 n.33);
14 (iii) appropriately deferred to this Court the question of what preclusive effect his award would
15 have (*id.*); and (iv) crafted a detailed opinion rejecting Plaintiff's First Amendment retaliation
16 claim based on the evidence and case law (*id.* at 1262-64).

17 Both of Chung's arguments fail. As evidenced by Plaintiff's own complaint and this
18 case's procedural history, DA Rosen and the County are not the same entity. Moreover, Chung
19 cites no authority establishing that a district attorney is equated with the County for which they
20 work for purposes of establishing privity of argument. In fact, they lack privity because they have
21 been positioned differently within the context of this lawsuit, where the County was dismissed
22 from the case and a theory of liability has continued against Rosen. *See Chung v. Cnty. of Santa*
23 *Clara*, No. 21-CV-07583-WHO, 2022 WL 6768204 (N.D. Cal. Oct. 11, 2022) (Dkt. 82).
24 Representation of both the County and Rosen by the same County Counsel office does not
25 establish that they are the same party for purposes of judicial estoppel.

26 Additionally, Chung's argument for judicial estoppel crumbles because the County failed
27 in persuading the Arbitrator to accept its earlier position. While the County earlier argued that it
28 was improper to assess the impact of the First Amendment in the arbitration proceedings, Chung

advanced freedom of speech protection as an affirmative defense, stressing that "the importance and relevance of a First Amendment analysis here cannot be understated" (Chung's arbitration brief, Dkt. 92-1 at 1139), and he prevailed on the issue.  Arbitrator Cohn found that the just cause standard permitted him "to address relevant external law" as Chung suggested, but the Arbitrator ultimately rejected Chung's First Amendment retaliation claim based on case law and the record before him.  Dkt. 92-1 at 1262-64.  Arbitrator Cohn did not accept the County's invitation to abstain from resolving the evidence and arguments on Plaintiff's theory that he was retaliated against because of the February 14 Op-Ed.  Thus, the County does not obtain an unfair advantage by arguing res judicata now.  *See New Hampshire*, 532 U.S. at 751.  Therefore, the Court finds that the County is not judicially estopped from arguing the res judicata effect of the Cohn Award on Chung's First Amendment claims related to the same events.

### 2. Res Judicata

Res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised" in a prior action that resulted in a final judgment on the merits.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "Claim preclusion is a broad doctrine that bars bringing claims that were previously litigated as well as some claims that were never before adjudicated." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 327 (9th Cir. 1995).  Under California law, claim preclusion applies when: (1) the party to be precluded was a party or in privity with a party to the previous adjudication; (2) the second lawsuit involves the same "cause of action" as the first; and (3) there was a final judgment on the merits in the first lawsuit.  *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).

Under Title 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments as would be afforded those judgments by courts of that state.  *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001).  Section 1738 applies where administrative findings have been reviewed by state courts of general jurisdiction.  *See Clements*, 69 F.3d at 326-27.  "Under California law, a prior administrative proceeding, if upheld on review (or not reviewed at all), will be binding in later civil actions to the same extent as a state court decision if the administrative proceeding possessed the requisite judicial character."  *White v. City of*

11

*Pasadena*, 671 F.3d 918, 927 (9th Cir. 2012) (quotation omitted); *see also Eaton v. Siemens*, 571 F. App'x 620, 621 (9th Cir. 2014) (affirming dismissal of city employee's complaint based on preclusive effect of advisory, administrative "arbitration proceeding" upholding employment termination). The preclusive effect of state administrative decisions, even unreviewed ones, extends to legal as well as factual issues, so long as the administrative proceeding satisfies the three-factor fairness test established in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966). *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018) ("Because California has adopted the *Utah Construction* standard, we give preclusive effect to a state administrative decision if the California courts would do so.")

In light of this authority and the parties' arguments, the Court examines whether the arbitration had sufficient judicial character under the *Utah Construction* fairness factors, and then turns to the three factors regarding claim preclusion set forth in *San Diego Police Officers' Association*.

### a. *Utah Construction* Fairness Factors

For an administrative decision to have preclusive effect, (i) "the administrative agency [must have] act[ed] in a judicial capacity;" (ii) "the agency resolve[d] disputed issues of fact properly before it" and (iii) "the parties ha[d] an adequate opportunity to litigate." *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994).

### i. Judicial Capacity

To determine whether an administrative agency is acting in a judicial capacity, California law requires that:

> (1) the administrative hearing was conducted in a judicial-like adversary proceeding; (2) the proceeding required witnesses to testify under oath; (3) the agency determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the administrative agency maintained a verbatim record of the proceedings.

*White v. City of Pasadena*, 671 F.3d 918, 928 (9th Cir. 2012) (citing *Imen v. Glassford*, 201 Cal. App. 3d 898, 907 (1988)). "California precedent makes clear that an administrative hearing, to

1    qualify as sufficiently 'judicial' for collateral estoppel purposes, need not be identical to a judicial

2    trial, so long as basic due process considerations are satisfied." *Basurto v. Imperial Irrigation*

3    *Dist.*, 211 Cal. App. 4th 866, 884 (2012).

4          The arbitration proceeding at issue here demonstrated sufficient judicial capacity. The

5    parties were represented by counsel throughout the adversarial proceeding, and counsel presented

6    thorough argument regarding both the law and the facts of the dispute. Dkt. 92-1 at 1113-90

7    (post-hearing briefs from counsel for both Chung and the County). The proceeding was conducted

8    over a two-day period. Dkt. 92-1 at 7-526 (transcripts from days one and two of Cohn

9    arbitration). An impartial, third-party decision maker, whom the parties jointly selected, presided.

10   *Id.* Each party had the opportunity to call witnesses to testify under oath, cross-examine those

11   witnesses called by the other party, and present documentary evidence. *Id.* The proceedings were

12   transcribed by court reporters. *Id.* A thorough written decision was issued by the impartial

13   decision maker. Dkt. 92-1 at 1226-65. The proceeding thus had sufficient judicial characteristics

14   because basic due process considerations were satisfied.

15         **ii.    Disputes Resolved were "Properly Before" the Arbitrator**

16         The second *Utah Construction* factor calls on the Court to consider whether an "issue is

17   properly before an administrative tribunal" because "that body has jurisdiction to decide it."

18   *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995) (citation omitted).

19         Chung stresses the limited scope of the arbitration, repeating that the CBA provided, "No

20   matter other than a grievance that is an alleged violation of a specific provision(s) as written and

21   submitted in the formal grievance may be reviewed on the merits by an arbitrator." Dkt. 96-2 at

22   35. Chung cites to cases holding that labor arbitrations conducted solely pursuant to a CBA

23   generally do not preclude statutory claims in a later civil proceeding. *See* Dkt. 96 at 20-21. But

24   none of the decisions on which Chung relies involved – as is the case here – a public employee's

25   appeal rights created at least in part by a governmental authority or procedure.

26         The CBA was not the sole source of Chung's appeal rights. Section 708 of the County

27   Charter permitted Plaintiff to appeal his suspension by (1) "hearing before the Personnel Board" or

28   (2) "an alternate hearing procedure" upon which the "Board of Supervisors and a recognized

employee organization may agree." Brandwagjn Decl., Ex. D (Dkt. 92-1 at 619-20). The CBA creates the alternate hearing procedure considered in that second category, articulating grievance procedures for deputy district attorneys in Santa Clara County. RJN, Ex. A (Dkt. 96-2 at 6-47). The GAA's appeal of Chung's suspension acknowledged this, stating in part that an arbitration was "[i]n accordance with the appeal rights outlined in the Notice, as well as the County Charter and Memorandum of Understanding . . . between the County and the GAA." Dkt. 92-1 at 5-6.

Chung does not dispute that Cohn was mutually selected by the parties and had jurisdiction to decide whether just cause existed to sustain the DOA's disciplinary suspension of Chung. Dkt. 92-1 at 1227 (describing the issue as framed by the parties and the arbitrator). Both parties agree that authority to consider the dispute – an appeal of the suspension – was granted by the collective bargaining agreement between the GAA and the County. Dkt. 92 at 13-14; Dkt. 96 at 9. The arbitrator considered the evidence that was presented and factual disputes properly before him during the arbitration, and he ultimately sustained a reduced suspension for Chung after consideration of the parties' arguments. The arbitrator thus resolved a dispute that was properly before him.

### iii. Adequate Opportunity to Litigate

Chung maintains that he was deprived of an adequate opportunity to litigate his First Amendment affirmative defense to his suspension. Early in the proceedings, the arbitrator stated in relevant part, "I'm going to limit the First Amendment issues to argument only. I don't need any evidence on First Amendment in this particular proceeding." Dkt. 96-2 at 53. This exclusion of evidence, combined with the County's stated opposition to consideration of any First Amendment evidence, Chung avers, deprived him of an adequate opportunity to litigate the First Amendment claim. However, Chung in fact presented evidence of First Amendment violations, calling multiple witnesses to testify regarding retaliation and chilling of speech attributable to DA Rosen and the District Attorney's Office. *See, e.g.*, Dkt. 92-1 at 474-75 (testimony of James Morris, former deputy district attorney, regarding Rosen's propensity to retaliate against staff who made disfavored comments in the media). Further, Chung argued at length that consideration of the alleged First Amendment violation by the arbitrator was essential. Dkt. 92-1 at 1137-41

14

(Chung's arbitration brief). Moreover, as demonstrated in the Cohn Award, the arbitrator sided with Chung and considered his First Amendment affirmative defense over the County's objections. Dkt. 92-1 at 1262-64. Chung was not deprived of the opportunity to litigate the issue, he simply lost. *Id.* At 1264 (Cohn concluded, "Thus, even if [Chung's] conduct was generally protected by the First Amendment, the County could nevertheless regulate through discipline that conduct."). Chung also had the opportunity, as the County highlights, to litigate the issue in the Superior Court's consideration of the Cohn Award. Chung did not seek to vacate the arbitration award, as he could have, on the basis the arbitrator exceeded his authority by considering the First Amendment issue. *See* Cal. Code of Civ. Pro. § 1286.2(a)(4) (allowing for such relief if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.").

In sum, Chung had an opportunity to litigate in the arbitration proceeding and the *Utah Construction* factors all weigh in favor of a determination that the procedure giving rise to the Cohn Award and the Superior Court judgment based upon it had sufficient judicial character to have preclusive effect.

### a. *San Diego Police Officers' Ass'n* Res Judicata Factors

As noted, claim preclusion applies when: (1) the party to be precluded was a party or in privity with a party to the previous adjudication; (2) the second lawsuit involves the same "cause of action" as the first; and (3) there was a final judgment on the merits in the first lawsuit. *San Diego Police Officers' Ass'n*, 568 F.3d at 734. The Court considers these elements in turn.

#### i. Identity of the Parties

The first factor is whether "the party to be precluded was a party or in privity with a party to the previous adjudication." *San Diego Police Officers' Ass'n*, 568 F.3d at 734. Here, the relevant party to be precluded is Chung, who was a party to the administrative proceedings and an active participant. *See* Dkt. 92-1 at 349 (Chung introduced as grievant on the record). Further, although Chung attempts to distinguish his interests from those of the GAA, the union representing him in the arbitration proceedings, he was clearly in privity with the GAA where he concedes that the union and its counsel represented him in the arbitration proceeding and Chung

15

1    actively participated in the union's challenge to the discipline levied against him.  *See* Dkt. 92-1 at

2    6.  Therefore, the first requirement of claim preclusion is met.

### ii.   Same Cause of Action

Next the Court considers whether this lawsuit involves the same "cause of action" as the arbitration.  *See San Diego Police Officers' Ass'n*, 568 F.3d at 734 (citing *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 1170 (2003)).  California law defines a "cause of action" for purposes of res judicata by employing a "'primary rights' theory." *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004).  Under the primary rights theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty."  *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003) (citing *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998)).  The key to the analysis is "the harm suffered." *San Diego Police Officers' Ass'n*, 568 F.3d at 734 (quoting *Agarwal v. Johnson*, 25 Cal. 3d 932 (1970)).  "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery."  *Id.* (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)); *see also Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 809 (9th Cir. 2007) ("California's primary rights theory does not mean that different causes of action are involved just because relief may be obtained under either of two legal theories." (internal quotation marks, citations, and alterations omitted)).  In other words, so long as the same primary right is at issue, res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  *Kay*, 504 F.3d at 809 (internal quotation marks and citations omitted).

Chung argues that different rights are at issue between the two proceedings – the arbitration dealing with Chung's contractual rights as a County employee under the CBA, while this action deals with Chung's constitutional rights under the First Amendment.  He emphasizes

that the two proceedings involve different calculations of damages – the arbitration considered backpay due, and this action considers potential reputational or other damages.

Here, the primary right Chung seeks to vindicate is the right to be free in his employment from acts in retaliation for his exercise of free speech rights. *See, e.g.*, Second Amended Complaint (Dkt. 70) at ¶ 22 ("as defendant Rosen had directed, Mr. Chung was wrongfully disciplined for his Op-Ed piece"), ¶¶ 23-27, ¶38 ("Rosen's intentional actions and failures . . . , including . . . his custom, policy, and practice to punish employees who exercise their right to free speech, along with a failure to investigate and remedy unlawful retaliatory actions as alleged above, constitute a custom, policy, or practice . . . and deliberate indifference to Mr. Chung's First Amendment rights"). Chung placed the same primary right at issue in his administrative appeal. Indeed, that was his entire theory of the case: "In this case, you'll see this list of violations that . . . completely ignore[ed] the most important protection which is the First Amendment." Dkt. 92-1 at 44; *see also* Dkt. 92-1 at 44 ("Mr. Chung has an absolute right to express his own personal opinion as he attempted to do here."). These arguments demonstrate that, in both the arbitration proceedings and here, Chung seeks relief from the same alleged harm – retaliatory discipline aimed at penalizing his free speech, his February 14 op-ed.

In the arbitration, Chung reiterated the importance of his First Amendment rights throughout the proceedings over the County's repeated efforts to avoid the subject. *See* Dkt. 92-1 at 1138 (Chung's post-hearing brief, arguing "the importance and relevance of a First Amendment analysis here cannot be understated"), and Dkt. 92-1 at 1139 ("The DA himself does not appear to be aware of the limits that the First Amendment places upon his ability to dictate what attorneys write or say about criminal justice issues."). Through both proceedings Chung seeks to hold DA Rosen (and the County) accountable for allegedly violating the same duty: to not retaliate against employees' First Amendment rights. Because the arbitration proceedings and this case involve the same injury to Chung and the same allegedly retaliatory conduct by DA Rosen, the same primary right is at stake.

Even though Chung's Section 1983 claim is framed in constitutional terms, the facts essential to the maintenance of the claim were already considered by the arbitrator. Chung's

17

1    proposed distinction between the relief sought and available in the arbitration – a just cause

2    determination – versus the relief he seeks in the instant case – damages for reputational harm – is

3    of no moment in the res judicata analysis.  This case involves the same cause of action as the one

4    considered before, satisfying the second factor in the res judicata assessment.

### iii.   Final Judgment on the Merits

Finally, the Court considers whether there "was a final judgment on the merits in the first lawsuit." *San Diego Police Officers' Ass'n*, 568 F.3d at 734.  Chung avers that res judicata does not preclude his First Amendment claim in this case because the award from a second arbitration that he and the county engaged in was not confirmed as a final judgment by any court.[1]  *See* Dkt. 96 at 27-28.  This argument fails because it ignores the preclusive effect of the Cohn Award. Arbitrator Cohn found that, under a First Amendment analysis informed by *Pickering* and *Garcetti*, Plaintiff's February 14 Op-Ed speech was public employee speech – not private citizen speech – and thus, was not insulated from discipline or regulation by the Constitution.  Dkt. 92-1 at 1262-64 (referring to *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006)).  On September 14, 2022, the Superior Court for the County of Santa Clara granted a petition by the County to confirm the Cohn Award, over Chung's opposition.  Dkt. 92-1 at 1266-1365.  On October 25, 2022, the Superior Court entered judgment in accordance with the September 14 order and the Cohn Award, both of which were attached. Dkt. 92-1 at 1366-1415.  Chung took no appeal nor sought any writ with respect to the October 25, 2022 judgment.  Accordingly, the Court finds that the confirmed arbitration award and judgment constitute a final judgment on the merits.

//

//

---

[1] Chung faced separate, subsequent discipline by the DAO.  Brandwagjn Decl., Ex. S (Dkt. 92-1 at 2882-2906).  Chung administratively appealed that discipline, leading to a second arbitration between the parties.  *Id.*  Arbitrator Paul Roose presided over a two-day hearing and issued an award.  *Id.*  There is no evidence in the record that the Roose arbitration award, dated November 10, 2022, has been confirmed as a judgment.  However, the status of the Roose award is irrelevant to the Court's assessment here because neither it nor the conduct for which Chung was disciplined are the subject of the operative complaint.  *See* Dkt. 70.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. The doctrine of judicial estoppel does not bar DA Rosen's arguments, and the doctrine of res judicata applies to preclude Chung's previously adjudicated First Amendment retaliation claim.

**IT IS SO ORDERED.**

Dated: July 20, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**