TONY LOPRESTI, County Counsel (S.B. #289269)
XAVIER M. BRANDWAJN, Deputy County Counsel (S.B. #246218)
RICK CHANG, Deputy County Counsel (S.B. #209515)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240
Email: xavier.brandwajn@cco.sccgov.org
Email: rick.chang@cco.sccgov.org

Attorneys for Defendant
JEFFREY F. ROSEN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Francisco Division)

| | |
|---|---|
| DANIEL CHUNG, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>JEFFREY F. ROSEN, individually; and DOES 1-50, inclusive,<br><br>        Defendant. | No. 21-CV-07583 AMO<br><br>**DEFENDANT JEFFREY F. ROSEN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    September 4, 2025<br>Time:    2:00 p.m.<br>Ctrm:   10 - 19th Fl.<br>Judge:  Honorable Araceli Martínez-Olguín<br>Trial Date: June 29, 2026 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ....................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................3

    A.    The Publication of the February 14 Op-Ed...........................................4

    B.    The Investigation into Plaintiff's February 14 Op-Ed .............................5

    C.    Plaintiff's First Administrative Appeal.................................................6

    D.    The Judgment Resulting from the Award in the First Administrative Appeal.......................................................................................8

    E.    The Second Administrative Appeal ......................................................8

    F.    Procedural Background of This Action ...............................................10

        1.    Plaintiff's allegations. ........................................................10

        2.    Rosen's first motion for summary judgment. ...........................10

        3.    Plaintiff's appeal to the Ninth Circuit Court of Appeals. .............11

III.   ARGUMENT............................................................................................12

    A.    Legal Standards..............................................................................12

    B.    Plaintiff Cannot Establish a Triable Issue of Fact as to a Crucial Element of His Sole Cause of Action for First Amendment Retaliation Because it Has Already Been Determined that He Spoke as a Public Employee in the February 14 Op-Ed ...........................................................................13

        1.    There was a final adjudication. ..............................................16

        2.    The issue is identical..........................................................16

        3.    The issue was actually litigated and necessarily decided. ..........18

        4.    Plaintiff was in privity with GAA in the First Administrative Appeal.............................................................................19

        5.    The impact of issue preclusion on Plaintiff's claim...................20

        6.    Rosen is entitled to qualified immunity ...................................23

IV.   CONCLUSION.........................................................................................24

i

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Creighton*
    483 U.S. 635 (1987) ......................................................................................................24

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ......................................................................................................13

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011) ......................................................................................................24

*Boeken v. Philip Morris USA, Inc.*
    48 Cal. 4th 788 (2010) ..................................................................................................15

*Caldeira v. Cnty. of Kauai*
    866 F.2d 1175 (9th Cir. 1989) ......................................................................................21

*Carmen v. San Francisco Unified Sch. Dist.*
    237 F.3d 1026 (9th Cir. 2001) ......................................................................................13

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ......................................................................................................13

*Christianson v. Colt Indus. Operating Corp.*
    486 U.S. 800 (1988) ......................................................................................................16

*Coleman v. Quaker Oats Co.*
    232 F.3d 1271 (9th Cir. 2000) ......................................................................................14

*Dahlia v. Rodriguez*
    735 F.3d 1060 (9th Cir. 2013) ...............................................................................14, 20

*DKN Holdings LLC v. Faerber*
    61 Cal. 4th 813 (2015) ...........................................................................................12, 15

*Eng v. Cooley*
    552 F.3d 1062 (9th Cir. 2009) ...............................................................................14, 22

*Evans v. Celotex Corp.*
    194 Cal. App. 3d 741 (1987) ........................................................................................15

*Fallon v. Dudek*
    135 F.4th 831 (9th Cir. 2025) .......................................................................................16

*Garcetti v. Ceballos*
    547 U.S. 410 (2006) ...............................................................................11, 18, 22, 23

*Hernandez v. City of Pomona*
    46 Cal. 4th 501 (2009) ..................................................................................................17

*Hines v. Cal. PUC*
    No. C 07-4145 CW, 2008 U.S. Dist. LEXIS 122887 (N.D. Cal. June 30, 2008) ........15, 16, 20

ii

*In re Oracle Corp. Sec. Litig.*
  627 F.3d 376 (9th Cir. 2010) ...............................................................13

*Kamilche Co. v. United States*
  53 F.3d 1059 (9th Cir. 1995) ...............................................................15

*Keenan v. Allan*
  91 F.3d 1275 (9th Cir. 1996) ...............................................................13

*L.F. v. Lake Washington Sch. Dist. #414*
  947 F.3d 621 (9th Cir. 2020) ...............................................................13

*Mitchell v. Forsyth*
  472 U.S. 511 (1985)..............................................................................23

*Murray v. Alaska Airlines, Inc.*
  50 Cal. 4th 860 (2010) .........................................................................20

*Pearson v. Callahan*
  555 U.S. 223 (2009)..............................................................................23

*Pickering v. Bd. of Educ*
  391 U.S. 563 (1968) ...............................................................11, 18, 19

*Quality Towing, Inc. v. Jackson*
  No. 15-cv-01756-PSG, 2016 U.S. Dist. LEXIS 69995
  (N.D. Cal. May 26, 2016) ...............................................................15, 20

*Rodriguez v. Countrywide Homes*
  668 F. Supp. 2d 1239 (E.D. Cal. 2009)................................................14

*Smith v. Harrington*
  No. C 12-03533 LB, 2015 U.S. Dist. LEXIS 39628
  (N.D. Cal. Mar. 27, 2015) ...............................................................15, 20

*Spirit of Aloha Temple v. Cnty. of Maui*
  49 F.4th 1180 (9th Cir. 2022) ..............................................................14

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*
  809 F.2d 626 (9th Cir. 1987) ...............................................................13

*United States v. Jingles*
  702 F.3d 494 (9th Cir. 2012) ...............................................................16

*United States v. Utah Construction & Mining Co.*
  384 U.S. 394 (1966) ........................................................................11, 15

## STATUTES

### United States Code

28 U.S.C. § 1738...................................................................12, 16, 21
42 U.S.C. § 1983.........................................................................12, 21

**California Penal Code**

Section 422........................................................................................................................17

**RULES**

**Federal Rules of Civil Procedure**

Rule 56..............................................................................................................................1
Rule 56(a).........................................................................................................................12
Rule 56(e).........................................................................................................................13

**Civil Local Rule**

Rule 7-5(a) .........................................................................................................................3

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for
Summary Judgment; Memorandum of Points and Authorities

21-CV-07583 AMO

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**PLEASE TAKE NOTICE** that **on September 4, 2025 at 2:00 p.m.** in **Courtroom 9, 19th Floor** of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Jeffrey A. Rosen ("Rosen") will and hereby does move the Court for summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56.

This relief is appropriate because there is no genuine dispute as to any material fact and Rosen is entitled to judgment as a matter of law. This Motion is based on this Notice, the following Memorandum, the declaration of Xavier M. Brandwajn filed herewith, the entire case record, and on any arguments that the Court may receive at or before the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Plaintiff Daniel Chung, a deputy district attorney, submitted an opinion editorial on criminal justice reform—under his official title, on work time, using work resources, but without authorization—that *The Mercury News* published on February 14, 2021 ("the February 14 Op-Ed"). The February 14 Op-Ed gave justice partners of the Santa Clara County District Attorney's Office ("DAO") the incorrect impression that Plaintiff was speaking in his official capacity for DAO or Rosen, the elected District Attorney. *The Mercury News* published the op-ed precisely because this impression gave Plaintiff's speech additional weight. Plaintiff was investigated and suspended for this conduct. He appealed that discipline in an administrative arbitration that he agreed was binding. There, he convinced the arbitrator to hear and rule on what rights Plaintiff had in the February 14 Op-Ed speech under the First Amendment, even though he had already filed this federal action, in which he alleges a single claim of First Amendment retaliation. The arbitrator did rule on that issue—but in a manner adverse to Plaintiff. The arbitrator found that, in the February 14 Op-Ed, Plaintiff spoke as a public employee rather than a private citizen, and as such, Plaintiff's speech was not constitutionally protected and could be regulated by his employer. The California Superior Court confirmed that opinion and all of its findings in a final judgment. This Court and the Ninth Circuit Court of Appeals have already concluded that this state court judgment is entitled to full faith

/ /

1

1    and credit.  These undisputed facts and the straightforward application of California's issue

2    preclusion doctrine and the law of the case doctrine foreclose what remains of this case.

3        Plaintiff, as master of his complaint, alleges that he suffered certain adverse employment

4    actions in retaliation for the same underlying speech—his February 14 Op-Ed.  To establish First

5    Amendment retaliation, a crucial element on which Plaintiff bears the burden is that the speech at

6    issue was made in his capacity as a private citizen and not as a public employee.  But that issue has

7    already been adjudicated adversely to Plaintiff, as this Court found and the Ninth Circuit Court of

8    Appeals affirmed.  Both this Court and the Ninth Circuit concluded that the arbitration had sufficient

9    judicial character and that the resulting Superior Court judgment was a final judgment on the merits

10   entitled to preclusive effect and full faith and credit.  Taking as true Plaintiff's allegations that the

11   events he recounts in the complaint were all in retaliation for his February 14 Op-Ed—and framing

12   summary judgment accordingly—his entire claim fails as a matter of law because he cannot raise a

13   triable issue of material fact to dispute the unprotected nature of his underlying speech.  The

14   application of issue preclusion and law of the case is consistent with the public policies supporting

15   those doctrines, as well as with the Ninth Circuit's memorandum opinion, which considered only

16   California's separate claim preclusion doctrine that was the basis of Rosen's first motion.

17       These indisputable facts also entitle Rosen to qualified immunity.  Because Plaintiff cannot

18   show that his speech was protected, he cannot establish a constitutional violation in any alleged

19   adverse employment decision that he contends was in retaliation for that speech.  Further, there was

20   no clearly established right for Plaintiff's conduct in connection with his preparation and submission

21   of the February 14 Op-Ed, as was confirmed by the state court judgment finding that his speech was

22   not protected and could be regulated by his employer.

23       For the foregoing reasons, discussed in greater detail below, the Court should enter summary

24   judgment in Rosen's favor.  Plaintiff seeks to relitigate a crucial, threshold issue that was already

25   decided against him.  The doctrines of issue preclusion and the law of the case prevent exactly that.

26   / /

27   / /

28   / /

## II. BACKGROUND[1]

On February 11, 2021, Plaintiff, a Deputy District Attorney (DDA), drafted an op-ed on work time, on his work computer, and sent it to *The Mercury News* for publication from his work e-mail. ECF 92-1[2], Ex. H at p. 6; *see also* Declaration of Xavier M. Brandwajn, filed concurrently ("Brandwajn Decl."), Ex. 3 at pp. 358:11-360:9, 363:17-25, 364:18-365:3.  Plaintiff sought publication of this op-ed by sending emails, again during normal working hours, to several email addresses at *The Mercury News*.  ECF 92-1, Ex. D at JX A, Att. 7-10.  His first email was to the Opinion Editor at opinion@mercurynews.com from his work email address, dchung@dao.sccgov.org.  *Id.* at JX A, Att. 1.  In his initial email, Plaintiff included a line that read, "This only expresses my personal opinion and not the views of my office," but he did not include those words in the body of his article or in his subsequent communications with *The Mercury News*. Brandwajn Decl., Ex. 3 at pp. 367:6-368:1.  By his own admission, Plaintiff could easily have included those words in the body or at the end of his op-ed, either of which he admits would have been "more helpful" and an "explicit disclaimer"—but he did neither.  *Id.* at pp. 368:2-369:9.

Shortly thereafter, Plaintiff forwarded his initial email to *The Mercury News* reporter Robert Salonga, asking to "please forward to the appropriate email address if . . . incorrect below."  ECF 92-1, Ex. D at JX A, Att. 2.  Plaintiff knew Salonga from prosecutions he handled in his official capacity as a DDA, on which Salonga had reported.  Brandwajn Decl., Ex. 3 at pp. 373:17-374:8. Notably, Plaintiff had interacted with Salonga only in his official capacity as a DAO prosecutor.  *Id.* He again used his work email, signature block, and official title to email Salonga.  ECF 92-1, Ex. D at JX A, Att. 2; Ex. H at 6-7.

On Friday, February 12, 2021, Ed Clendaniel, Opinion Editor at *The Mercury News*, replied to Plaintiff (at his DAO email address) to discuss the publication of the op-ed on the following

---

[1]  Although the Court may remember much of this background from Rosen's first summary judgment motion, an abridged version is included here for completeness.

[2]  Given the overlap of evidence supporting the present Motion and Rosen's first summary judgment motion, and in order not to overburden the Court, most of that evidence is not re-filed here; rather, only the key documents are re-filed here.  *See also* Civ. L.R. 7-5(a) ("Factual contentions made in support of . . . any motion must be supported by an affidavit or declaration and by appropriate references to the record.").  If a chambers copy of the other, earlier filings referenced in this Motion will assist the Court, however, we will happily provide one.

1  Sunday. *Id.*, Ex. D at JX A, Att. 3. One minute later, Plaintiff eagerly replied from his work email,

2  "Sounds good. I'd love to get it published. Thank you for the opportunity!" *Id.*, Ex. D at JX A, Att.

3  4. Plaintiff did not ask *anything* about publication: he did not ask to review a proof before

4  publication; he did not ask about the title; and he did not in any way state that the op-ed contained

5  only his personal views rather than those of DAO. *Id.*; *see also* Brandwajn Decl., Ex. 3 at pp. 377:7-

6  24, 379:1-21. Nor did he repeat, in any of his emails with Salonga or Clendaniel, his purported

7  disclaimer—even upon learning about the forthcoming publication of his op-ed. *Id.* at p. 382:2-7.

8      Plaintiff sent these emails under his official title: "Daniel M. Chung, Deputy District

9  Attorney, Santa Clara County, (408) 792-2474." *Id.* at pp. 365:4-21, 367:1-5, 366:2-22; ECF 92-1,

10  Ex. D at JX A, Att. 1; Ex. H at p. 6. He did not seek the authorization or approval of Rosen or

11  anyone else at DAO to write, send, or publish the op-ed. Brandwajn Decl., Ex. 3 at pp. 366:16-22,

12  376:24-377:6; Ex. H at p. 7.

13  **A.    The Publication of the February 14 Op-Ed**

14      On Sunday, February 14, 2021, *The Mercury News* published Plaintiff's op-ed under the title,

15  "Criminal justice reforms must protect victims, communities." ECF 92-1, Ex. D at JX A, Att. 5.

16  The article began, "By Daniel M. Chung." *Id.* Plaintiff's op-ed ended with an italicized tagline that

17  read, "Daniel M. Chung is a Santa Clara County deputy district attorney." *Id.*; *see also* Ex. H at p. 7.

18  It did not include any disclaimer that these were Plaintiff's personal views and not those of Rosen or

19  DAO. *Id.* In his op-ed, Plaintiff discussed "criminal justice reform," pending "misguided" criminal

20  justice reform legislation introduced by Senator Nancy Skinner, and he criticized mental health

21  diversion programs. *Id.*, Ex. D at JX A, Att. 5. He encouraged readers to "be more active

22  participants in our government to prevent violence and protect victims and our communities . . . to

23  amplify our voices so that our legislators, law enforcement leaders and other political and

24  community partners hear us and effect real change." *Id.*

25      Later that morning, Rosen called Plaintiff's direct supervisor, Jim Demertzis, to inquire about

26  how the February 14 Op-Ed came to be published and whether Plaintiff had sought prior

27  authorization from Demertzis. Brandwajn Decl., Ex. 2 at p. 55:5-17; ECF 92-1, Ex. H at p. 8.

28  Demertzis confirmed that Plaintiff had not sought his permission or counsel for the op-ed. *Id.*

4

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for                                    21-CV-07583 AMO
Summary Judgment; Memorandum of Points and Authorities

1  Rosen and his Chief Assistant, Jay Boyarsky, then discussed the op-ed that same morning. Both

2  were concerned about Plaintiff's use of his official title and the impression that his views were those

3  of DAO. Brandwajn Decl., Ex. 2 at pp. 161:8-164:13; *id.*, Ex. 3 at pp. 264:16-269:25; ECF 92-1,

4  Ex. H at pp. 9-10. Accordingly, they decided to launch an investigation into the circumstances of

5  the preparation and publication of Plaintiff's op-ed. *Id.*

6  **B.    The Investigation into Plaintiff's February 14 Op-Ed**

7         Later on February 14, 2021, Boyarsky asked Assistant District Attorney (ADA) Scott Tsui to

8  review the DAO Policies and Procedures Manual (PPM) to determine whether Plaintiff's use of his

9  official title in the op-ed violated office policies and to initiate an internal investigation into the

10  circumstances surrounding the publication. Brandwajn Decl., Ex 2 at pp. 83:10-84:8; ECF 92-1, Ex.

11  H at pp. 9-10. ADA Tsui conducted his review and then prepared a Notice of Administrative

12  Investigative Interview, which he served on Plaintiff on February 16, 2021.[3] ECF 92-1, Ex. D at JX

13  A, Att. 6; Brandwajn Decl., Ex. 2 at pp. 85:17-86:5.

14        After being served with that Notice, Plaintiff asked *The Mercury News* to remove his official

15  title from, and include a disclaimer in, the February 14 Op-Ed. ECF 92-1, Ex. D at JX A, Att. 7.

16  *The Mercury News* declined. *Id.* at JX A, Att. 8. In response to Plaintiff's request to remove his

17  official title, Clendaniel wrote, "we would not alter the tagline, either. One of the appeals of the

18  oped [sic] was your standing in the community, which gives it added weight." *Id.* And in response

19  to Plaintiff's requested disclaimer, Clendaniel wrote, "we never include that sort of reference . . . as

20  folks who work in your office know, as well as others throughout the county." *Id.*; *see also id.*, Ex.

21  H at pp. 10-11.

22        ADA Tsui subsequently authored a Notice of Recommended Disciplinary Action

23  summarizing his administrative investigation and recommending a two-week suspension for

24  Plaintiff's violations of DAO and County policies. ECF 92-1, Ex. D at JX A, Att. 1; Ex. H at 12.

25

26  [3] On the same day, Plaintiff was reassigned to Mental Health Court effective March 1. ECF 92-1,
Ex. H at 10. Rosen testified that the intent behind that move was to "help [Plaintiff] succeed" by

27  "send[ing] him to an assignment where he can learn more about mental health diversion and how it
can be a valuable tool that a prosecutor has in achieving justice for our community," "particularly in
a more collaborative environment like mental health court." Brandwajn Decl., Ex. 3 at pp. 270:1-

28  271:4.

1  On May 3, 2021, Plaintiff and Andrew Ganz, his union attorney appointed by his union, the

2  Government Attorneys Association (GAA), participated in a *Skelly* conference with ADA Terry

3  Harman.  *See id.*, Ex. D at JX G at p. 5; Ex. H at p. 13.  Ganz admitted that Plaintiff misused his

4  official title.  Brandwajn Decl., Ex. 3 at pp. 218:20-219:7.  Plaintiff also apologized for his

5  "technical violations of using office time and resources, failing to get permission, and using [his]

6  official title."  ECF 92-1, Ex. D at JX G at p. 6.

7          On June 11, 2021, ADA Harman authored a Final Notice of Discipline.  *Id.*, Ex. D at JX G;

8  Ex. H at pp. 13-14.  In upholding the 10-day suspension, she determined, *inter alia*, that: "You are

9  not being disciplined for expressing your personal opinions.  The issue is whether you

10 misrepresented your personal opinions as the opinions of the Office," and that "[i]t is clear from the

11 totality of circumstances that your Op-Ed was not written as an interested community member, but

12 as a representative of this Office."  *Id.*, Ex. D at p. 7.

13 **C.    Plaintiff's First Administrative Appeal**

14         Under Section 708 of the County Charter, Plaintiff could appeal disciplinary decisions by (1)

15 "hearing before the Personnel Board" or (2) "an alternate hearing procedure" upon which the "Board

16 of Supervisors and a recognized employee organization may agree."  ECF 49 at Ex. B; *see also* ECF

17 92-1, Ex. D at JX G at pp. 9-10.  On June 25, 2021, GAA—on Plaintiff's behalf—appealed the

18 suspension via the alternate arbitration procedure in part pursuant to the Memorandum of Agreement

19 between the GAA and the County ("MOA").  ECF 92-1, Ex. A.  The mutually selected arbitrator,

20 Alexander Cohn, held a Zoom hearing on December 14 and 15, 2021.  In his own words, "[t]he

21 parties were afforded full opportunity for the examination and cross-examination of witnesses, the

22 introduction of relevant exhibits, and for closing argument."  *Id.*, Ex. H at p. 1.  The parties were

23 each represented by counsel, who made opening statements, presented argument, and examined

24 witnesses.  *Id.* at p. 2.  Seven witnesses, including Plaintiff and Rosen, testified live and under oath.

25 Brandwajn Decl., Exs. 2 & 3.  One of these witnesses, James Morris, was a nonparty former DAO

26 employee whom GAA specifically subpoenaed on Plaintiff's behalf.  *Id.*, Ex. 3 at pp. 424-45.  And

27 the arbitrator accepted into evidence GAA's offer of proof of testimony of an eighth witness—

28 another nonparty former DAO employee, James Sibley.  *Id.* at pp. 390:13-391:3.  In addition, the

1   arbitrator admitted 14 joint exhibits, plus 12 separate GAA exhibits—totaling 586 pages—into

2   evidence.  ECF 92-1, Exs. D, E.  All proceedings were transcribed by a certified court reporter.  *See*

3   Brandwajn Decl., Exs. 2 & 3.

4        On March 1, 2022, the parties submitted lengthy post-hearing briefs with the benefit of

5   significant time and thought about the issues, the transcribed testimony, and the documentary

6   evidence.  *See* Brandwajn Decl., Exs. 4 & 5.  Both sides argued the merits of Plaintiff's claim that

7   Rosen and the County retaliated against him for exercising his alleged First Amendment free speech

8   rights in his February 14, 2021 Op-Ed.  *Id.*, Ex. 4 at pp. 20-24, Ex. 5 at pp. 35-42.

9        On March 28, 2022, Arbitrator Cohn issued a 40-page Opinion and Award.  Brandwajn

10  Decl., Ex. 6 at Ex. B.  The arbitrator found just cause for discipline against Plaintiff but reduced the

11  suspension from 10 working days to five.  *Id.* at pp. 39-40.  The arbitrator expressly considered

12  Plaintiff's claim that he was retaliated against for exercising First Amendment free speech rights,

13  finding that "when the matter at issue is just cause, that standard allows him to address relevant

14  external law" and "First Amendment questions may or may not play a role in whether there is cause

15  (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that

16  discipline."  *Id.* at p. 37, n. 33.  Relying on the evidence and pertinent Supreme Court precedent, the

17  arbitrator ruled against Plaintiff on that issue.  Notably, Arbitrator Cohn found that "Rosen credibly

18  testified that he had no issue with the content of the op-ed and, more important, Harman – the non-

19  binding Skelly HO [Hearing Officer] – did not include content in her findings of rule violations.

20  Moreover, she specifically advised Grievant he was not being disciplined for expressing his personal

21  opinions"; rather, Plaintiff "violated Office rules by acting without authorization; i.e.,

22  misrepresenting his opinions as those of the Office.  The bottom line is that, if the suspension (i.e.,

23  adverse employment action) was not based on content (i.e., speech), there is no First Amendment

24  coverage."  *Id.* at pp. 37-38.  The arbitrator further concluded that Plaintiff was speaking as a public

25  employee—and not a private citizen—in the February 14 Op-Ed, and thus, his speech was not

26  protected and could be regulated:

27          *When read as a whole and in context, with [Plaintiff's] name and title, it*
           *would be unreasonable for a member of the community to believe the piece*
28          *was written by a private citizen as opposed to a public employee.*  Simply

1
2
3
4
5
6
7

put, to the extent the op-ed is seen to be exactly the type of speech the Constitution was intended to protect, there still may be other employment considerations. *The parties hereto are attorneys steeped in First Amendment law*; e.g., *Pickering v. Garcetti* [sic], etc. . . .

Accordingly, while such issues are rarely found free from doubt, given this particular record *where [Plaintiff] is responsible for the February 14 op-ed despite his initial intent to write as a private citizen, it would be patently unreasonable for the Arbitrator to find that a reader would not believe he was speaking for/representing DAO.  Thus, even if [Plaintiff's] conduct was generally protected by the First Amendment, the County could nevertheless regulate through discipline that conduct.  Thus, persuasive proof establishes cause for discipline* . . .

8    *Id.* at pp. 38-39 (footnotes omitted; emphasis added).

9    **D.    The Judgment Resulting from the Award in the First Administrative Appeal**

10   On September 14, 2022, the Superior Court for the County of Santa Clara granted the County

11   of Santa Clara's petition to confirm the First Administrative Appeal award, over Plaintiff's

12   opposition.  ECF 92-1, Exs. I, J, K.  On October 25, 2022, the Superior Court entered judgment, in

13   accordance with *and attaching* Arbitrator Cohn's Opinion and Award.  Brandwajn Decl., Ex. 6.

14   Because no appeal or writ was taken from this October 25, 2022 judgment, it is a final judgment.

15   **E.    The Second Administrative Appeal**

16   On May 26, 2021, a Valley Transportation Authority (VTA) employee shot and killed eight

17   fellow employees and then himself in San José, near the County government center.  ECF 92-1, Ex.

18   S at p. 10.  The DAO, the designated lead agency of second responders to assist victims' families, set

19   up a Family Assistance Center (FAC) at the American Red Cross building in San José.  *Id.* at pp. 10-

20   11.  A few select trained and experienced DAO employees were asked to respond to the FAC.  *Id.*

21   Plaintiff was not one of them.  *Id.*, Ex. M at pp. 55:8-19, 60:10-63:25.  Yet—and even though

22   he was then already being disciplined for taking unauthorized actions, during normal working hours,

23   that gave the wrong impression that he spoke for Rosen and DAO—Plaintiff replicated the same

24   type of conduct.  *See id.*, Ex. S at pp. 24-25.  He went to the Red Cross building during normal

25   working hours, without authorization or training, at the announced time of Rosen's scheduled press

26   conference at that location.  *Id.* at pp. 13, 26; Ex. M at pp. 55:8-19, 60:10-63:25, 177:17-183:20.  At

27   the FAC, Plaintiff was spotted loitering near grieving families, wearing a name badge stating

28   "F.A.C. Support," to which he had added his name and "DA Office."  *Id.*; Ex. S at p. 21; Ex. M at

8

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for                                        21-CV-07583 AMO
Summary Judgment; Memorandum of Points and Authorities

pp. 234:3-235:10; Ex. N at pp. 361:15-366:24, 373:20-374:9, 479:19-480:24; Ex. P at pp. 1033:7-1034:2.  Plaintiff acted suspiciously when approached by security personnel and was instructed by his supervisor to return to the office.  *Id.*, Ex. N at pp. 361:15-374:9, 382:4-383:13; Ex. P at pp. 1043:24-1046:15.

On May 28, 2021, Plaintiff was placed on paid administrative leave pending investigation into his attendance at the FAC without solicitation.  ECF 92-1, Ex. S at p. 23; *see also* Brandwajn Decl., Ex. 1 at ¶ 24.  On May 31, the DAO Bureau of Investigation (BOI) posted an internal security alert memorandum about Plaintiff.  ECF 92-1, Ex. S at p. 23; *see also* Brandwajn Decl., Ex. 1 at ¶¶ 25-26.  The BOI Chief and Captain both explained that the memorandum was necessary given Plaintiff's conduct at the FAC and "disgruntled employee" behavior.  ECF 92-1, Ex. N at pp. 381:13-387:18; Ex. O at pp. 732:2-733:20.  Two days later, the security alert memorandum was modified in accordance with Plaintiff's and GAA's request.  *Id.*  Rosen had no role in directing the issuance of any security alert regarding Plaintiff and only heard about them after the fact.  *Id.*, Ex. O at pp. 573:15-574:12.  After an investigation and *Skelly* hearing, Plaintiff's employment was terminated in October 2021.  *Id.*, Ex. S at pp. 23-28.

Plaintiff, again through GAA, appealed the termination through the same County Charter arbitration procedure.  The arbitrator in that second proceeding, Paul Roose, held an in-person hearing on July 11-15 and 25, 2022.  *Id.* at p. 2.  Plaintiff's theory was again one of alleged retaliation for his February 14 op-ed.  He argued that the op-ed was "what set forth that extremely drastic change in the way Mr. Chung was viewed by and treated by the office.  After February 14th in 2021, in the weeks following, his fate was basically sealed with this office.  And the question was really: How are we going to get rid of him?"  *Id.*, Ex. M at p. 23:8-15.

The arbitrator issued his opinion on November 10, 2022.  He found just cause for discipline for some violations but not others, reduced the termination to a 30-day suspension, ordered Plaintiff's reinstatement to his job classification by December 10, 2022, and concluded that Plaintiff was not entitled to back pay.  *Id.*, Ex. S at p. 44.  The arbitrator found that Plaintiff "displayed exceedingly poor judgment," "failed to grasp that fundamental reality" of the DAO's structure, and "resorted to the unauthorized use of his role as a DDA to enter and influence the policy sphere."  *Id.*

9

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for                              21-CV-07583 AMO
Summary Judgment; Memorandum of Points and Authorities

at pp. 34-35.  The arbitrator also concluded: "This was not a First Amendment free speech opportunity.  This was a work event, an extremely important one.  It was a chance for the DA to present his office in a positive light and assure the public that the DAO was responding effectively to this mass workplace shooting.  Employees, as private citizens, could certainly comment on the tragic events in whatever way they chose.  But it was inexcusable for an employee to seek to use this public event to further his own political agenda . . . ."  *Id.*

**F.    Procedural Background of This Action**

      **1.    <u>Plaintiff's allegations.</u>**

      On September 28, 2021, while his First Administrative Appeal was pending, Plaintiff filed this action against the County and Rosen.  ECF 1.  On October 11, 2022, the Court dismissed the County without leave to amend.[4]  ECF 82.

      In the operative complaint, Plaintiff alleges that Rosen is personally liable, in his individual capacity, for "wrongfully disciplin[ing]" and "depriv[ing] Chung of his rights under the First Amendment . . . when he punished Mr. Chung for his [February 14] Op-Ed."  Brandwajn Decl., Ex. 1 at ¶¶ 22, 37.  Rosen's alleged retaliation includes: reassignments (*id.* at ¶ 22); a suspension (*id.* at ¶ 23), being placed on administrative leave in May 2021 (*id.* at ¶ 24); and the issuance of security alerts also in May 2021 (*id.* at ¶¶ 25-26).  Plaintiff alleges that these events are part of Rosen's singular "policy, custom, and practice" to "punish[] other employees who exercised their right to free speech . . ."  *Id.* at ¶ 29; *see also* ¶¶ 30-43.  Rosen filed his Answer on August 11, 2022, denying Plaintiff's allegations.  ECF 73.

      **2.    <u>Rosen's first motion for summary judgment.</u>**

      On March 8, 2023, Rosen moved for summary judgment, arguing that Arbitrator Cohn's award and the resulting Superior Court judgment precluded, under res judicata, Plaintiff's sole claim of First Amendment retaliation in this case.  ECF 92 at pp. 1, 13-23.  Both this Court and Plaintiff appear to have interpreted the res judicata grounds of Rosen's motion broadly to encompass both claim preclusion and issue preclusion.  *See, e.g.*, Brandwajn Decl., Ex. 7 at p. 8 ("DA Rosen brings

---

[4]  The dismissal of the County is final because Plaintiff did not appeal it.  *See* Brandwajn Decl., Ex. 8 at 4.

1  this motion for summary judgment on the ground that the doctrines of res judicata and collateral

2  estoppel prevent Chung from asserting his Section 1983 claim . . . ."); ECF 109 at p. 27:5-10

3  (Plaintiff's counsel, James McManis: "[A]s I understand their motion, they're saying, 'We're

4  entitled to the benefits of the collateral estoppel and . . . res judicata doctrines and that's why we

5  should cut you off at the federal court.'").

6       On July 20, 2023, this Court granted Rosen's motion.  Brandwajn Decl., Ex. 7.  Notably, this

7  Court found that "under a First Amendment analysis informed by *Pickering* and *Garcetti*, Plaintiff's

8  February 14 Op-Ed speech was public employee speech – not private citizen speech – and thus, was

9  not insulated from discipline or regulation by the Constitution," relying on Arbitrator Cohn's opinion

10  and the subsequent state court final judgment on the merits.  *Id.* at p. 18.  This Court also considered

11  the *Utah Construction* factors and found that:  (i) the First Administrative Appeal "had sufficient

12  judicial characteristics because basic due process considerations were satisfied" (*id.* at p. 13); (ii) the

13  arbitrator resolved the First Amendment "dispute that was properly before him" (*id.* at p. 14); (iii)

14  Plaintiff "had an opportunity to litigate in the arbitration proceeding" (*id.* at p. 15); and (iv) "the

15  *Utah Construction* factors all weigh in favor of a determination that the procedure giving rise to the

16  Cohn Award and the Superior Court judgment based on it had sufficient judicial character to have

17  preclusive effect" (*id.*).  This Court entered judgment in favor of Rosen the same day.  ECF 114.

18      **3.**    **Plaintiff's appeal to the Ninth Circuit Court of Appeals.**

19       On August 16, 2023, Plaintiff appealed.  ECF 116.  The Ninth Circuit construed Rosen's

20  motion for summary judgment narrowly.  Notably, the court directed the parties to be prepared to

21  address at argument (i) authorities explaining that courts have used "res judicata" too broadly to

22  encompass the separate doctrines of claim preclusion and issue preclusion, and (ii) requirements

23  unique to claim preclusion, such as the privity between the party asserting a claim preclusion defense

24  and the party who litigated the prior proceeding argued to have preclusive effect.  *See* ECF 119 at 2

25  / /

26  / /

27  / /

28  / /

1  (citing, *inter alia*, *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823 (2015)).[5]

2      The court's memorandum opinion, which issued on November 5, 2024 and affirmed-in-part

3  and reversed-in-part the grant of summary judgment, confirmed this narrow read.  First, the court

4  noted that "Rosen moved for summary judgment, arguing, based on the Arbitrator's decision, that

5  California's *claim preclusion* doctrine bars Chung's § 1983 claim."  Brandwajn Decl., Ex. 8 at p. 4

6  (emphasis added).  Second, the court affirmed this Court's rejection of Plaintiff's argument that

7  Rosen was judicially estopped from arguing that claim preclusion barred Plaintiff's claim of First

8  Amendment retaliation.  *Id.* at p. 5.  Third, the court held that "the state trial court's confirmation of

9  the arbitration award constitutes a judicial proceeding for purposes of [28 U.S.C.] § 1738 and must

10  therefore be given the full faith and credit it would receive under California law" and, thus,

11  "affirm[ed] the district court's determination that the arbitration award can have preclusive effect."

12  *Id.* at pp. 5-6.  Fourth, focusing on the "same cause of action" element of "claim preclusion" and not

13  considering issue preclusion, the court ruled that Plaintiff's claim was precluded "insofar as it seeks

14  to remedy the ten-day suspension already addressed at arbitration" but "is not precluded and can

15  proceed insofar as it seeks to remedy those other [alleged] harms."  *Id.* at pp. 6-8.

16      On May 21, 2025, this Court granted Rosen leave to file the present motion.  ECF 134.

17  ### III.   ARGUMENT

18  **A.   Legal Standards**

19      Summary judgment is proper where the pleadings, discovery, and affidavits show that there

20  is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a

21  matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who

22  fails to make a showing sufficient to establish the existence of an element essential to that party's

23  case, and on which that party will bear the burden of proof at trial . . . since a complete failure of

24  proof concerning an essential element of the nonmoving party's case necessarily renders all other

25

26  [5]  In *DKN Holdings*, the California Supreme Court noted that "terminology in discussing the
preclusive effect of judgments has been inconsistent and may have caused some confusion" because

27  "[w]e have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion
and issue preclusion, which we described as two separate 'aspects' of an overarching doctrine."  The
California Supreme Court also noted that "unlike claim preclusion, issue preclusion can be raised by

28  one who was not a party or privy in the first suit."  *DKN Holdings*, 61 Cal. 4th at 823-24.

1  facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it

2  might affect the outcome of the lawsuit under governing law, and a dispute about such a material

3  fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

4  nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5       The moving party bears the initial burden of identifying those portions of the record which

6  demonstrate the absence of a genuine dispute of material fact.  The burden then shifts to the

7  nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions,

8  answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

9  genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e).  The non-moving

10  party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec.*

11  *Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  Rather, he "must

12  come forth with evidence from which a jury could reasonably render a verdict in the non-moving

13  party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  Unless the non-moving party makes this

14  showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

15       A court's function on a summary judgment motion is not to make credibility determinations

16  or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc. v.*

17  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in

18  the light most favorable to the nonmoving party, and inferences drawn from the facts must be

19  viewed in the light most favorable to the nonmoving party. *See id.* at 631.  That obligation,

20  however, does not require a court to ignore undisputed evidence produced by the movant. *See L.F.*

21  *v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020).  Further, it is not the district

22  court's task to scour the record for a genuine issue of triable fact; the non-moving party must

23  identify with reasonable particularity the evidence that precludes summary judgment. *Keenan v.*

24  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237

25  F.3d 1026, 1028-29, 1031 (9th Cir. 2001).

26  **B.     Plaintiff Cannot Establish a Triable Issue of Fact as to a Crucial Element of His Sole**
        **Cause of Action for First Amendment Retaliation Because it Has Already Been**
27      **Determined that He Spoke as a Public Employee in the February 14 Op-Ed**

28       Plaintiff's sole cause of action asserts that Rosen retaliated against him, in several alleged

13

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for                                    21-CV-07583 AMO
Summary Judgment; Memorandum of Points and Authorities

1   adverse employment actions, for Plaintiff's exercise of alleged First Amendment rights in the same

2   underlying speech—the February 14, 2021 Op-Ed.  Brandwajn Decl., Ex. 1 at ¶¶ 16, 19, 21-27, 37-

3   40.  Plaintiff's allegations frame the issues for summary judgment.  *See, e.g., Rodriguez v.*

4   *Countrywide Homes*, 668 F. Supp. 2d 1239, 1246 (E.D. Cal. 2009) ("The issues on summary

5   judgment are framed by the complaint," and thus, "a plaintiff cannot oppose summary judgment

6   based on a new theory of liability because it would essentially blind side the defendant with a new

7   legal issue after the bulk of discovery has likely been completed.") (citing *Coleman v. Quaker Oats*

8   *Co.*, 232 F.3d 1271, 1292-1293 (9th Cir. 2000) (holding that where plaintiff did not include legal

9   theory in complaint and did not identify the theory at any time prior to summary judgment, she could

10  not rely on the theory for the first time during summary judgment)).

11      A cause of action of First Amendment retaliation has five elements:  (1) whether the plaintiff

12  spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public

13  employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the

14  adverse employment action; (4) whether the government had an adequate justification for treating

15  the employee differently from other members of the general public; and (5) whether the government

16  would have taken the adverse employment action even absent the protected speech.  *Eng v. Cooley*,

17  552 F.3d 1062, 1070 (9th Cir. 2009).  The plaintiff bears the burden of proof on the first three

18  elements.  *Id.*  A plaintiff's inability to prove any of these first three elements is "fatal."  *Dahlia v.*

19  *Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc) (noting that "failure to meet any one

20  of them is fatal to the plaintiff's case" and "it may be more efficient in some instances to answer a

21  potentially dispositive question further down the *Eng* list first").  Here, Plaintiff cannot raise a

22  genuine issue of triable fact—and his claim therefore fails as a matter of law—because it has already

23  been adjudicated and determined that ***Plaintiff spoke as a public employee in the February 14 Op-***

24  ***Ed.***  Consequently, both California's issue preclusion doctrine and the law of the case doctrine

25  preclude Plaintiff from relitigating this critical element of his claim.

26      "Federal courts must apply the collateral estoppel rules of the state that rendered the

27  underlying judgment."  *Spirit of Aloha Temple v. Cnty. of Maui*, 49 F.4th 1180, 1193 (9th Cir. 2022)

28  (quotation omitted).  Because a California state court rendered the October 25, 2022 judgment,

14

Defendant Jeffrey F. Rosen's Notice of Motion and Motion for                    21-CV-07583 AMO
Summary Judgment; Memorandum of Points and Authorities

California law applies.  In California, "[i]ssue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  *DKN Holdings*, 61 Cal. 4th at 824 (citation omitted).  "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action."  *Id.* (citing *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010)).  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  *Id.* at 825 (citations omitted.)  "[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case."  *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995)); *see also Smith v. Harrington*, No. C 12-03533 LB, 2015 U.S. Dist. LEXIS 39628, *57 (N.D. Cal. Mar. 27, 2015) ("Clearly, a former judgment is not a collateral estoppel on issues which might have been raised but were not; just as clearly it is a collateral estoppel on issues which were raised, even though some factual matters or legal arguments which could have been presented were not."); *Evans v. Celotex Corp.*, 194 Cal. App. 3d 741, 748 (1987) ("An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence.  Otherwise, there would be no end to litigation.").

Courts have dismissed First Amendment retaliation claims on collateral estoppel grounds where a previous proceeding adversely determined an element of the plaintiff's claim.  In *Quality Towing, Inc. v. Jackson*, No. 15-cv-01756-PSG, 2016 U.S. Dist. LEXIS 69995 (N.D. Cal. May 26, 2016), for example, this District found that the plaintiff's claim of First Amendment retaliation was "barred by issue preclusion" because the causation element (the plaintiff's requirement to show "a substantial causal relationship between the constitutionally protected activity and the adverse action") had already been decided in a manner adverse to the plaintiff in an earlier state administrative process that satisfied the *Utah Construction* fairness test and whose "findings have preclusive effect on this court."  *Id.* at **2-9.  Additionally, in *Hines v. Cal. PUC*, No. C 07-4145 CW, 2008 U.S. Dist. LEXIS 122887 (N.D. Cal. June 30, 2008), this District dismissed a First Amendment retaliation claim where the plaintiff spoke as a public employee and the State Personnel Board's earlier finding—that the plaintiff had not suffered an adverse employment action—

1   precluded re-litigation of the issue in federal court because "[a]n adverse employment action is an

2   element of Plaintiff's First Amendment retaliation claim as well." *Id.* at \*\*21-28.

3       Similarly, here, all elements of issue preclusion are met because the issue of whether Plaintiff

4   spoke as a private citizen or a public employee in his February 14 Op-Ed has already been

5   adjudicated and determined. Therefore, Plaintiff cannot establish a critical element of his claim.

6       **1.**    **There was a final adjudication.**

7       As discussed above, the opinion and award following the First Administrative Appeal—

8   including its findings about Plaintiff speaking as a public employee, as opposed to a private citizen,

9   in the February 14 Op-Ed—was reduced to a final state court judgment. *See* § II(D), *supra*.

10       Moreover, the finality of Arbitrator Cohn's award and the resulting state court judgment is

11   itself the law of the case. "The law of the case doctrine generally prohibits a court from considering

12   an issue that has already been decided by that same court or a higher court in the same case." *Fallon*

13   *v. Dudek*, 135 F.4th 831, 836 (9th Cir. 2025) (quotation omitted). The doctrine "promotes the

14   finality and efficiency of the judicial process by protecting against the agitation of settled issues."

15   *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). "For the

16   doctrine to apply, the issue in question must have been decided explicitly or by necessary

17   implication in the previous disposition." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012)

18   (cleaned up).

19       Here, this Court has already found that Arbitrator Cohn's findings were reduced to a state

20   court final judgment on the merits that is entitled to preclusive effect. Brandwajn Decl., Ex. 7 at p.

21   18. The Ninth Circuit "affirm[ed] the district court's determination that the arbitration award can

22   have preclusive effect." *Id.*, Ex. 8 at p. 6. And the Ninth Circuit agreed that "the state trial court's

23   confirmation of the arbitration award constitutes a judicial proceeding for purposes of § 1738 and

24   must therefore be given the full faith and credit it would receive under California law." *Id.* at p. 5.

25   This issue is settled.

26       **2.**    **The issue is identical.**

27       California's "identical issue" requirement addresses whether "identical factual allegations are

28   at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."

*Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12 (2009). "[C]ourts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." *Id.* at 511.

Here, Plaintiff alleges that in his February 14 Op-Ed, he was "speaking as a **private citizen** and not in his capacity as deputy district attorney . . . ." Brandwajn Decl., Ex. 1 at ¶ 16 (emphasis in original). He further alleges that "his *official duties as deputy district attorney* did **not** include writing opinion pieces or providing commentary to local newspapers" and he "was **not** required to communicate with the media or news organizations regarding matters of general public concern as part of *his regular job duties*." *Id.* at ¶ 19 (italics added; other emphasis is original).

This distinction of private citizen versus public employee, and how Plaintiff's job duties might inform the analysis, is identical to the issue Plaintiff raised in the First Administrative Appeal. On direct examination, Plaintiff testified that, at the time he sent the February 14 Op-Ed for publication, his work for DAO included communicating with the media about not only his active prosecutions, but also larger criminal justice reform issues—just like he did in the February 14 Op-Ed. Notably, Plaintiff explained that, even before the February 14 Op-Ed, he had "been in close communication with the Mercury News as they interviewed [him] and talked to [him] about a [Valley Fair Mall shooting] case [he] was prosecuting . . . and they wanted to talk to [him]," and "*it wasn't just about, you know, the facts of the case*. *They wanted to hear [his] thoughts on* . . . *legislation needs*, about how in the Penal Code, Penal Code 422 has some deficiencies . . . and that [he] thought *it represented a serious gap in our legal system* . . . ." Brandwajn Decl., Ex. 3 at pp. 332:19-333:15 (emphasis added). On cross-examination, Plaintiff confirmed that he reached out to Salonga about publication of his February 14 Op-Ed because he knew Salonga from Plaintiff's official duties, including the prosecution of the earlier Valley Fair Mall shooting case. *Id.* at pp. 373:11-374:19.

Moreover, in Plaintiff's post-arbitration brief, based on the above evidence and his acknowledgement that "the Arbitrator is very familiar with these [First Amendment] principles," Plaintiff argued that he spoke as a private citizen, and not a public employee, in the February 14 Op-Ed. Brandwajn Decl., Ex. 4 at p. 20; *see also id.* at pp. 21-23. Plaintiff analogized himself to the

plaintiff in *Pickering* (*id.* at p. 21), a key First Amendment retaliation case, and he argued that he

"did not write this piece *as part of his job duties*, which interestingly, the DA's Office stakes much

of its determination upon but cuts very much against them in the analysis." *Id.* at p. 22 (emphasis

added, citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Plaintiff continued:

> The DA himself does not appear to be aware of the limits that the First Amendment places upon his ability to dictate what attorneys write or say about criminal justice issues. DA Rosen seems to believe that attorneys for his office may not publicly opine on issues of criminal justice. He testified that because Chung works for the DA's Office (a fact, ironically, that he acknowledges is known to the public despite the arguments that the tagline somehow outed him as a Santa Clara DDA), when he publicly discusses issues relating to the criminal justice system, that creates the improper appearance that he is speaking for the DA's Office. (RT 291-292). DA Rosen believes that his attorneys have forfeited their right to take their experience inside the criminal justice system and expose this information, including concerns about the functioning of it, to the public, without permission from him . . . . One of the primary reasons this protection exists, as outlined in *Pickering*, is so that government employees can expose malfeasance or other concerns about the functioning of government to the public. . . . Chung has a Constitutional right to publish this piece . . . .

*Id.* at pp. 22-24. The County also argued the other side of the same issue—why Plaintiff spoke as a

public employee—with judicial and evidentiary support. Brandwajn Decl., Ex. 5 at pp. 36-40.

Accordingly, this factor for application of issue preclusion is easily met.

**3.    The issue was actually litigated and necessarily decided.**

As evident from the evidence summarized above and the parties' post-arbitration briefs, the

issue of whether Plaintiff spoke as a public employee in the February 14 Op-Ed was actually

litigated in the First Administrative Appeal.

That issue was also necessarily decided. Considering the evidence and the parties'

arguments, Arbitrator Cohn ruled—and the state court judgment confirms—that "***it would be

unreasonable for a member of the community to believe the [February 14, 2021] piece was written

by a private citizen as opposed to a public employee***" and "***despite [Plaintiff's] initial intent to write

as a private citizen, it would be patently unreasonable . . . to find that a reader would not believe

he was speaking for/representing DAO***." Brandwajn Decl., Ex. 6 at Ex. B at pp. 38-39 (emphasis

added). Arbitrator Cohn found it necessary to decide this issue as part of the just cause analysis

before him—at Plaintiff's specific behest and over the County's objections. *Id.* at p. 37, n. 33

("[W]hen the matter at issue is just cause, that standard allows [the arbitrator] to address relevant external law" and "First Amendment questions may or may not play a role in whether there is cause (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that discipline.").

Indeed, it is also the law of the case that this same issue was necessarily decided before. This Court found that "under a First Amendment analysis informed by *Pickering* and *Garcetti*, ***Plaintiff's February 14 Op-Ed speech was public employee speech – not private citizen speech – and thus, was not insulated from discipline or regulation by the Constitution*,**" and that this finding was reduced to a state court final judgment on the merits entitled to preclusive effect. Brandwajn Decl., Ex. 7 at p. 18 (emphasis added). The Ninth Circuit's ruling does not disturb—and, indeed, affirms— that part of this Court's ruling. As the Ninth Circuit noted, "[t]he Arbitrator concluded that ***the County could discipline Chung by suspending him without pay and that doing so would not run afoul of the First Amendment*.**" *Id.*, Ex. 8 at p. 7 (emphasis added). And as shown above, the arbitrator's conclusion was based in part on a finding that Plaintiff spoke as a public employee in the February 13 Op-Ed. The Ninth Circuit also "affirm[ed] the district court's determination that the arbitration award can have preclusive effect." *Id.* at p. 6. Further, the Ninth Circuit agreed that "the state trial court's confirmation of the arbitration award constitutes a judicial proceeding for purposes of § 1738 and must therefore be given the full faith and credit it would receive under California law." *Id.* at p. 5.

Therefore, this element is also met.

### 4.      Plaintiff was in privity with GAA in the First Administrative Appeal.

This element is met by this Court's findings that Plaintiff had the necessary privity with GAA, which represented him in the First Administrative Appeal. The Court found that Plaintiff "was clearly in privity with the GAA where he concedes that the union and its counsel represented him in the arbitration proceeding and Chung actively participated in the union's challenge to the discipline levied against him." Brandwajn Decl., Ex. 7 at pp. 15-16. The Ninth Circuit at least implicitly affirmed this finding by precluding the suspension aspect of Plaintiff's federal claim. *See, e.g., id.*, Ex. 8 at p. 7 ("In the arbitration, Chung—or more precisely, his union—challenged only

1   Chung's ten-day suspension without pay."). Accordingly, Plaintiff's privity with GAA is also the

2   law of the case.

3        In sum, the elements warranting the application of issue preclusion are met. The public

4   policies buttressing the doctrine would also best be served by applying the doctrine to the present

5   case. "Those policies include conserving judicial resources and promoting judicial economy by

6   minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of

7   the judicial system, and avoiding the harassment of parties through repeated litigation." *Murray v.*

8   *Alaska Airlines, Inc.*, 50 Cal. 4th 860, 878 (2010) (citations omitted). Relitigating the issue of

9   whether Plaintiff spoke as a public employee in the February 14 Op-Ed would undermine the

10  integrity of the extensive due process already afforded Plaintiff and the Superior Court final

11  judgment. The judgment followed Plaintiff's specific request to have that issue be adjudicated, even

12  though he had already filed the present case. The Ninth Circuit recently confirmed that this same

13  state court judgment has preclusive effect and is entitled to full faith and credit. Both this Court's

14  and the parties' judicial resources will be preserved—and the harassment of Rosen through litigation

15  will be reduced—by the straightforward application of issue preclusion in this case.

16       **5.    The impact of issue preclusion on Plaintiff's claim.**

17       The previous (and final) determination that Plaintiff spoke in his capacity as a public

18  employee in his February 14 Op-Ed is "fatal" to his First Amendment retaliation claim. *Dahlia*, 735

19  F.3d at 1067 n.4. That earlier determination precludes Plaintiff from relitigating—much less

20  disputing, including with new evidence—an essential element of his cause of action. *See Quality*

21  *Towing*, 2016 U.S. Dist. LEXIS 69995 at **3-9; *Hines*, 2008 U.S. Dist. LEXIS 122887 at **21-28;

22  *Smith*, 2015 U.S. Dist. LEXIS 39628 at *57. Importantly, that determination has the practical effect

23  of precluding the entirety of Plaintiff's cause of action against Rosen because Plaintiff contends that

24  all adverse employment actions alleged in his complaint were in retaliation for the same, underlying

25  speech—the February 14 Op-Ed. *See* Brandwajn Decl., Ex. 1 at ¶¶ 21-26, 29-43. The capacity in

26  which Plaintiff made that speech is therefore an element of his claim regardless of the (supposedly

27  retaliatory) act: Plaintiff alleges that he was suspended, reassigned, placed on administrative leave,

28  and made the subject of security alerts, *all* in retaliation for his February 14 Op-Ed.

20

The Ninth Circuit's decision in *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175 (9th Cir. 1989) is analogous and instructive.  In that case, the court affirmed summary judgment against the plaintiff on his § 1983 claim that his public employer violated his constitutional rights when it terminated his employment.  The gravamen of the plaintiff's claim was that he had a substantive due process right to employment by virtue of the clause in a collective bargaining agreement which provided that he would not be terminated except for proper cause.  *Id.* at 1176.  The plaintiff alleged that twelve "episodes" of wrongdoing by the county and his union were designed to bring about his ultimate discharge.  *Id.*  "The district court approached the disposition of the summary judgment motion in terms of the alleged twelve 'episodes.'"  *Id.*  The district court properly determined that one episode was "the crux" of the plaintiff's claims against the county because it led to the plaintiff's suspension and discharge.  The plaintiff appealed the discipline through an internal, two-day arbitration proceeding, after which the arbitrator found that there was just and proper cause to dismiss him.  *Id.* at 1176-77.  A state court then confirmed the arbitration award, and the plaintiff subsequently filed a federal court case.  *Id.* at 1177.  In granting summary judgment, the district court found that the state court judgment was binding under the Full Faith and Credit Statute, 28 U.S.C. § 1738, and that the episode that was arbitrated was the "linchpin" of the plaintiff's claims because, without it, the other episodes were not sufficient to sustain the plaintiff's claims.  *Id.*  The district court also found that the plaintiff's substantive due process claim had been raised and decided by the state court, such that issue preclusion would prevent the plaintiff from relitigating the claim.  *Id.* at 1178.  The Ninth Circuit agreed with the district court's analysis and affirmed because, as a matter of law, the plaintiff was collaterally estopped from attempting to establish some "improper" cause for his discharge other than what had been adjudicated.  *Id.* at 1178-80.

Similarly, here, in a two-day administrative arbitration regarding his suspension, Plaintiff insisted on the adjudication of his First Amendment rights in the February 14 Op-Ed.  Arbitrator Cohn found that Plaintiff's February 14 Op-Ed speech was not protected, and thus was subject to discipline, because Plaintiff spoke as a public employee.  That finding—and the resulting state court judgment that expressly attaches and incorporates that finding—is the "linchpin" of the remainder of Plaintiff's claim in this federal action, which is based entirely on the same, underlying February 14

1    Op-Ed speech.  Thus, because Plaintiff cannot establish that he was speaking as a private citizen in

2    that underlying speech, the speech is not constitutionally protected, and his entire claim crumbles.

3    As this Court previously found, "[t]he distinction [between public employee and private citizen

4    speech] is critical—the Supreme Court has held that 'when public employees make statements

5    pursuant to their official duties, the employees are not speaking as citizens for First Amendment

6    purposes, and the Constitution does not insulate their communications from employer discipline.'"

7    ECF 69 at 7 (quoting *Garcetti*, 547 U.S. at 421).  That critical issue has already been adjudicated

8    against Plaintiff and may not be re-litigated in this action or in any other proceeding.

9        Importantly, this preclusive effect of the collateral estoppel doctrine is not inconsistent with

10   the Ninth Circuit's ruling that the other adverse employment actions Plaintiff alleges in this case

11   presented different "harms" for purposes of the "same cause of action" element of California's

12   separate *claim preclusion* doctrine.  Brandwajn Decl., Ex. 8 at pp. 6-8.  Tellingly, the Ninth Circuit

13   did *not* conclude that any of Arbitrator Cohn's findings or the state court judgment incorporating

14   those findings—much less the specific finding that Plaintiff spoke as a public employee—was not

15   entitled to preclusive effect; instead, the court found that the entire state court judgment was entitled

16   to preclusive effect and "must therefore be given the full faith and credit it would receive under

17   California law."  *Id.* at p. 5.  The above analysis under the issue preclusion doctrine is consistent

18   with the Ninth Circuit's memorandum opinion.  Notably, only the third element of a First

19   Amendment retaliation claim—(3) "whether the plaintiff's protected speech was a substantial or

20   motivating factor *in the adverse employment action*"—focuses on the actual adverse employment

21   action because a causal relationship must be established for each such adverse employment action.

22   *Eng*, 552 F.3d at 1070.  But here, issue preclusion applies to foreclose Plaintiff from establishing the

23   required, second element—"whether the plaintiff spoke as a private citizen or public employee"—

24   which is a threshold requirement before even reaching causation.  Simply put, Plaintiff does not

25   allege that he was reassigned, the subject of issued security alerts, or placed on administrative leave

26   because of any speech *other* than the February 14 Op-Ed.[6]  Rather, his entire federal case is

27

28   [6]  And Plaintiff's opportunity to amend the pleadings or add parties lapsed almost three years ago.
     *See* ECF 66 ("Deadline to Amend/Add Parties: 9/16/2022").

1   premised on the notion that his February 14 Op-Ed was constitutionally protected speech, and that it

2   was a constitutional tort to have been reassigned, subject to security alerts, and placed on

3   administrative leave all because of that op-ed. But a final state court judgment holds against him on

4   that threshold issue on the merits —his February 14 Op-Ed speech was not constitutionally protected

5   because he was speaking as a public employee. That is the end of the inquiry.

6        Accordingly, the doctrines of issue preclusion and the law of the case prohibit Plaintiff from

7   creating a triable issue on, let alone proving, an essential element of his First Amendment claim.

8        **6.**    **Rosen is entitled to qualified immunity**

9        Giving the state court judgment its deserved preclusive effect also exempts Rosen from

10   liability under the doctrine of qualified immunity.

11        The doctrine of qualified immunity shields government officials from civil liability unless

12   their conduct violates a constitutional right that was clearly established at the time of the alleged

13   misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is "an

14   immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is

15   erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

16   Courts apply a two-pronged inquiry: (1) whether the evidence establishes a violation of a

17   constitutional right, and (2) if so, whether that right was clearly established at the time of the

18   challenged conduct. *Id*. at 232. Courts may address these prongs in any order. *Id*. at 236.

19        Here, given the foregoing, at least the first prong compels a finding of qualified immunity.

20   Speech made in a public employee capacity is not protected and does not result in the violation of a

21   constitutional right—*see, e.g.*, *Garcetti*, 547 U.S. at 421 (holding that "when public employees . . .

22   are not speaking as citizens for First Amendment purposes, . . . the Constitution does not insulate

23   their communications from employer discipline")—and it has already been found, confirmed, and

24   affirmed that Plaintiff spoke in that capacity in his February 14 Op-Ed. Plaintiff's inability to

25   establish this threshold element means that Rosen is entitled to qualified immunity.

26        Even if there were a constitutional violation—and there was not—Plaintiff still cannot satisfy

27   the second prong of the qualified immunity test. A right is "clearly established" only if it was

28   "sufficiently clear that a reasonable official would understand that what he is doing violates that

1  right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

2  (2011) (holding that "existing precedent must have placed the statutory or constitutional question

3  beyond debate"). Here, at the time of the challenged conduct, it was not "clearly established" that an

4  assistant district attorney could publish an op-ed on criminal justice reform—with an explicit tagline

5  identifying himself as "Daniel M. Chung, Santa Clara County deputy district attorney" and

6  otherwise falsely cloak his speech with the imprimatur and *gravitas* of his elected employer—

7  without prior employer approval and still invoke First Amendment protection. Under these

8  circumstances, no reasonable official in Rosen's position would have believed that investigating and

9  disciplining Plaintiff violated clearly established law. To the contrary, Arbitrator Cohn's findings of

10  just cause for a five-day suspension (Brandwajn Decl., Ex. 6 at Ex. B at pp. 38–39), while rejecting

11  Plaintiff's arguments of First Amendment retaliation—and the subsequent state court judgment

12  confirming the same—evince that Rosen's response was objectively reasonable and not with any

13  intent to infringe on a "clearly established" constitutional right.

14       In sum, because Plaintiff has not shown that any constitutional right was violated—let alone

15  one that was "clearly established" and known to Rosen—qualified immunity applies.

16  ### IV.   CONCLUSION

17       For the foregoing reasons, Rosen respectfully requests that the Court grant summary

18  judgment in his favor.

19                                          Respectfully submitted,

20  Dated: July 2, 2025                     TONY LOPRESTI
                                            County Counsel
21
                                    By:  */s/ Xavier M. Brandwajn*
22                                       XAVIER M. BRANDWAJN
                                         Deputy County Counsel
23                                       RICK CHANG
                                         Deputy County Counsel
24
                                         Attorneys for Defendant
25                                       JEFFREY F. ROSEN

26  3274014

27

28