UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CHUNG,<br><br>   Plaintiff,<br><br> v.<br><br>JEFFREY F ROSEN,<br><br>   Defendant. | Case No. 21-cv-07583-AMO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 140 |

Before the Court is Defendant Jeffrey F. Rosen's Motion for Summary Judgment. Plaintiff Daniel Chung, a former Deputy District Attorney for the County of Santa Clara, alleges that he suffered adverse employment actions in retaliation for an opinion-editorial in which he expressed views contrary to those publicly taken by the Santa Clara County's District Attorney, Rosen, in violation of Chung's First Amendment rights. Following the Court's grant of Rosen's first motion for summary judgment on claim preclusion grounds, the U.S. Court of Appeals for the Ninth Circuit affirmed in part, reversed in part, and remanded the case. Dkt. No. 120. With leave of Court, Rosen filed the instant motion for summary judgment, which was heard on September 4, 2025. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** Rosen's Motion, for the following reasons.

I. **BACKGROUND**

A robust account of the events underlying this case as well as the legal standard to be considered on a motion for summary judgment can be found in the Court's first order granting Rosen's motion for summary judgment. *See* Dkt. No. 112 ("MSJ Order"). For ease of reading, the Court briefly summarizes the relevant facts for purposes of this Order.

1    On February 11, 2021, Chung drafted an opinion-editorial (the "op-ed") on work time, on
2    his work computer, and sent it from his work e-mail to The Mercury News, a local newspaper, for
3    publication. Brandwagjn Decl., Ex. H (Dkt. No. 92-1 at 1197); *see also* Ex. C at 358:11-360:9,
4    363:17-25 (Dkt. No. 92-1 at 397-99, 402). On Sunday, February 14, 2021, The Mercury News
5    published Chung's op-ed under the title, "Criminal justice reforms must protect victims,
6    communities." Brandwagjn Decl., Ex. D (Dkt. No. 92-1 at 554-55). The op-ed's byline was, "By
7    Daniel M. Chung." *Id.* Chung's op-ed ended with an italicized tagline that read, "Daniel M.
8    Chung is a Santa Clara County deputy district attorney." *Id.*; Ex. H at 7 (Dkt. No. 92-1 at 1198).

In the days and weeks following publication of the Op-Ed, Chung suffered a range of adverse employment actions, purportedly at the direction of Rosen, including reassignment of job duties, e.g., Brandwagjn Decl., Ex. H at 10 (Dkt. No. 92-1 at 1201); and a ten-day suspension without pay, *id.*, Ex. D (Dkt. No. 92-1 at 529-35); Ex. H at 12 (Dkt. No. 92-1 at 1203).

Chung's union appealed his suspension pursuant to the County Charter and Collective Bargaining Agreement, and the union and County submitted the dispute to arbitration, mutually selecting Alexander Cohn to consider the arbitration. Brandwagjn Decl., Ex. H at 1 (Dkt. No. 92-1 at 1192). The parties were each represented by counsel, who made opening statements, presented argument, and examined witnesses. *Id.* at 2 (Dkt. No. 92-1 at 1193). Seven witnesses, including Chung and Rosen, testified live and under oath. Brandwagjn Decl., Exs. B, C (Dkt. 92-1 at 7-526). In addition, the arbitrator admitted 14 joint exhibits, plus 12 separate exhibits from Chung's union, the Government Attorneys Association ("GAA"), into evidence. Brandwagjn Decl., Exs. D, E (Dkt. 92-1 at 527-695). All proceedings were transcribed by a certified court reporter. Brandwagjn Decl., Exs. B, C (Dkt. No. 92-1 at 7-526). In the arbitrator's words, "[t]he parties were afforded full opportunity for the examination and cross-examination of witnesses, the introduction of relevant exhibits, and for closing argument." Brandwagjn Decl., Ex. H at 1 (Dkt. No. 92-1 at 1192).

On March 1, 2021, the parties submitted lengthy post-hearing briefs with the benefit of significant time, the transcribed testimony, and the documentary evidence. Brandwagjn Decl., Exs. F, G (Dkt. No. 92-1 at 1113-90). Pertinent here, both sides argued the merits of Chung's

claim that Rosen and the County retaliated against him for exercising his alleged First Amendment free speech rights in his February 14, 2021 op-ed. Brandwagjn Decl., Ex. F at 20-24, Ex. G at 35-42 (Dkt. 92-1 at 1137-41, 1182-89).

On March 28, 2021, Arbitrator Cohn issued a 40-page Opinion and Award ("Cohn Award"). Brandwajn Decl., Ex. 6 at Ex. B. The arbitrator found just cause for discipline against Plaintiff but reduced the suspension from 10 working days to five. Id. at pp. 39-40. The arbitrator expressly considered Plaintiff's claim that he was retaliated against for exercising First Amendment free speech rights, finding that "when the matter at issue is just cause, that standard allows him to address relevant external law" and "First Amendment questions may or may not play a role in whether there is cause (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that discipline." Id. at p. 37, n. 33. The arbitrator further concluded that Plaintiff was speaking as a public employee, not a private citizen, in the February 14 Op-Ed, and thus, his speech was not protected and could be regulated. Id. at pp. 38-39.

On September 14, 2022, the Superior Court for the County of Santa Clara granted the County of Santa Clara's petition to confirm the Cohn award, over Plaintiff's opposition. Brandwajn Decl., Ex. 6 (Dkt. No. 141-6 at 6-9). On October 25, 2022, the Superior Court entered judgment, in accordance with and attaching the Cohn Award. *Id.*, Ex. 6 (Dkt. No. 141-6). No appeal or writ was taken from this October 25, 2022 judgment.

In the operative complaint, Chung alleges that Rosen is personally liable, in his individual capacity, for "wrongfully disciplin[ing]" and "depriv[ing] Chung of his rights under the First Amendment . . . when he punished Mr. Chung for his [February 14] Op-Ed." Second Am. Compl. (Dkt. No. 70, "SAC") ¶¶ 22, 37. Rosen's alleged retaliation includes: reassignments, SAC ¶ 22; a suspension, *id.* ¶ 23; being placed on administrative leave in May 2021, *id.* ¶ 24; and the issuance of security alerts also in May 2021, *id.* ¶¶ 25-26. Chung alleges that these events are part of Rosen's singular "policy, custom, and practice" to "punish[] other employees who exercised their right to free speech[.]" SAC ¶ 29; *see also* ¶¶ 30-43.

## II. DISCUSSION

On November 5, 2024, the Court of Appeals issued a memorandum disposition in which it affirmed several portions of the first summary judgment order, reversed one portion of the summary judgment order, and remanded the case for further proceedings. *See* Dkt. No. 120 ("Mem Dispo"). In summary, the Court of Appeals affirmed this Court's ruling that judicial estoppel did not bar Rosen from arguing claim preclusion in these proceedings; affirmed this Court's ruling that the Cohn Award resulting from the labor arbitration could have preclusive effect; and reversed this Court's determination that the Cohn Award covered all the purported harms suffered by Chung. *See id.* Because the arbitration only addressed Chung's ten-day suspension without pay, not the other harms allegedly suffered, claim preclusion could not effectively bar the full breadth of Chung's claim for First Amendment retaliation. *Id.*

In Rosen's pending motion, he argues in significant part that the doctrine of collateral estoppel (issue preclusion) more narrowly applies and precludes resolution of an essential element of Chung's First Amendment retaliation claim in his favor. *See* Mot. at 13-23.[1] The First Amendment prevents the government from "abus[ing] its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (second alteration in original) (quoting *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968)). In the Ninth Circuit, courts must analyze a public employee's claim of retaliation in violation of the First Amendment by proceeding through a five-step inquiry:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and

---

[1] Rosen additionally argues that he is entitled to qualified immunity. Mot. at 23-24. Because the Court does not find a violation of constitutional rights in this case, it does not reach qualified immunity.

4

>  (5) whether the state would have taken the adverse employment
>  action even absent the protected speech.

*Burch v. City of Chubbuck*, --- F.4th ----, No. 24-3646, 2025 WL 2089115, at *5 (9th Cir. July 25, 2025) (quoting *Eng*, 552 F.3d at 1070). The plaintiff bears the burden of proof on the first three elements. *Eng*, 552 F.3d at 1070. A plaintiff's failure to establish any one of the elements is "fatal" to the plaintiff's case. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (noting that, while the elements are considered "sequential," "it may be more efficient in some instances to answer a potentially dispositive question further down the *Eng* list first.").

Here, Rosen contends he is entitled to summary judgment as to Chung's claim of retaliation based on the prior adjudication of the second element – that Chung spoke as a public employee rather than as a private citizen. Brandwajn Decl., Ex. 6 at Ex. B at 38-39. The arbitrator made this finding as part of his award, and the Superior Court confirmed this finding by attaching the Cohn Award to the judgment. *Id.*

"Federal courts must apply the collateral estoppel rules of the state that rendered the underlying judgment." *Spirit of Aloha Temple v. Cnty. of Maui*, 49 F.4th 1180, 1193 (9th Cir. 2022) (quotation omitted). Because a California state court rendered the October 25, 2022 judgment, California law applies.[2] In California, "[i]ssue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." *DKN Holdings*, 61 Cal. 4th at 824 (citation omitted). "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." *Id.* (citing *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010)). "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings*, 61 Cal. 4th at 825 (citations omitted). The Court takes up these elements in turn before addressing Chung's argument regarding the fairness of applying issue preclusion.

---

[2] Because the California doctrine of collateral estoppel applies, the Court does not consider the arguments advanced by Chung as to the federal doctrine of collateral estoppel, though such elements largely overlap with those under California law, which are explored below. *See* Opp. at 17-18 (citing *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007)).

### A. Final Adjudication

Chung resists the application of collateral estoppel here on the basis that his First Amendment defense was not decided in the Cohn Award "with the requisite finality." Opp. at 22. Two legal issues inform this discussion, including the principle of "final adjudication" for collateral estoppel purposes under California law and the "law of the case" doctrine.

"For purposes of issue preclusion, a final adjudication includes 'any prior adjudication of an issue in another action that is determined to be *sufficiently firm to be accorded conclusive effect*.'" *Rodriguez v. Lawrence Equip., Inc.*, 106 Cal. App. 5th 645, 658-59 (2024) (quoting *Meridian Financial Services, Inc. v. Phan*, 67 Cal. App. 5th 657, 688 (2021)) (emphasis in original). Factors supporting a determination of finality include (1) that "the parties were fully heard," (2) that the prior adjudication was supported by a "reasoned opinion," and (3) "that the decision was subject to appeal or was in fact reviewed on appeal." *Rodriguez*, 106 Cal. App. 5th at 658 (citing *Meridian Financial Services*, 67 Cal. App. 5th at 688-89). Importantly, finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Rodriguez*, 106 Cal. App. 5th at 658 (citing *Meridian Financial Services*, 67 Cal. App. 5th at 689) (internal quotation marks omitted).

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Fallon v. Dudek*, 135 F.4th 831, 836 (9th Cir. 2025) (quoting *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)) (emphasis omitted). The doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citation omitted).

Here, Chung avers that the Cohn Award was not a "final adjudication" for purposes of collateral estoppel because it did not decide his First Amendment retaliation defense with requisite finality. Opp. at 22. He emphasizes that Arbitrator Cohn stated his findings were not binding on this Court and that Arbitrator Cohn lacked jurisdiction to hear First Amendment questions. Opp. at 22; *see also id.* at 16-17.

6

1  At the outset, the Court rejects Chung's argument because it glosses over the procedural
2  history of this case – the preclusive effect on the public employee/private citizen element of his
3  claim arises from the state trial court judgment that confirmed the Cohn Award, not merely the
4  Award itself.[3]  *See* Brandwajn Decl., Ex. 6 at Exs. A & B.  On September 14, 2022, the California
5  Superior Court granted the County of Santa Clara's petition to confirm the Cohn Award, over
6  Chung's opposition.  *Id.*  On October 25, 2022, the Superior Court entered judgment in accordance
7  with and attaching the Cohn Award.  Brandwajn Decl., Ex. 6; *see also* Mem. Dispo. (Dkt. No.
8  120) at 5-6 ("Under California law, '[a] judgment confirming [an] arbitration award constitutes a
9  final judgment on the merits' that can have preclusive effect." (citation omitted)).  No appeal was
10 taken from the October 25, 2022 judgment, and its express incorporation of the Cohn Award
11 accordingly constitutes a final adjudication.

12 Chung argues that the Cohn Award was not sufficiently final for collateral estoppel
13 purposes, pointing to the Arbitrator's suggestions during the hearing and after that any findings he
14 made in relation to the First Amendment were limited to the labor arbitration and would not
15 necessarily bind this Court.  Opp. at 22.  However, the Arbitrator's averments regarding the legal
16 impact of his conclusions do not disturb the finality of the Award nor the finality of the judgment
17 that incorporates it.  The Arbitrator's statements, moreover, do not stand for the premise that the
18 arbitration he presided over should be ignored for its potentially preclusive effect.  To the
19 contrary, as the Arbitrator acknowledged, it is this Court that decides the preclusive effect of prior
20 proceedings.  *See* Brandwajn Decl., Ex. 6 (Dkt. No. 141-6 at 47 n.33) ("The [Federal] Court –
21 knowing this proceeding is informal without discovery and barely enforceable evidentiary rules –
22 will decide what weight, if any, to give the Arbitrator's finding[.]").  Chung cites no
23 countervailing authority.

---

[3] This is a key distinction between this case and the case cited by Chung in which a court found that earlier administrative proceedings fell short of providing preclusive effect.  *See* Opp. at 18 (citing *North Pacifica, LLC. v. City of Pacifica*, 366 F. Supp. 2d 927 (N.D. Cal. 2005)).  In *North Pacifica*, the subject administrative proceedings were not followed by an opportunity to contest or seek amendment of the administrative proceedings.  *North Pacifica*, 366 F. Supp. 2d at 928.  Here, the arbitration award was confirmed in a state court judgment.  Brandwajn Decl., Ex. 6 (Dkt. No. 141-6).

7

United States District Court
Northern District of California

In addition to the finality provided from the October 25, 2022 judgment, Chung's contentions regarding insufficient finality were already considered and rejected in the Court's initial summary judgment order and the Court's conclusions have thus become the law of the case. Chung argues that Arbitrator Cohn lacked jurisdiction to hear First Amendment questions (Opp. at 16-17), and he argues that he was deprived a full opportunity to litigate because of restrictions imposed by Arbitrator Cohn and County Counsel in the course of the Arbitration (Opp. at 17-21). The Court previously rejected these contentions, finding that "Chung in fact presented evidence of First Amendment violations, calling multiple witnesses to testify regarding retaliation and chilling of speech attributable to Rosen and the District Attorney's Office. Further, Chung argued at length that consideration of the alleged First Amendment violation by the arbitrator was essential." *See* MSJ Order (Dkt. No. 112) at 14-15. "Moreover, as demonstrated in the Cohn Award, the arbitrator sided with Chung and considered his First Amendment affirmative defense over the County's objections." *Id.* at 15. The Ninth Circuit affirmed, holding, "The district court also did not err in concluding that the County failed to persuade the Arbitrator to accept its argument that Chung's First Amendment claim should not be considered in the arbitration." Mem. Dispo. at 5. These prior determinations constitute the law of the case. *Fallon*, 135 F.4th at 836. Chung fails to advance any justification for avoiding application of the law of the case doctrine here.[4] Therefore, the Superior Court judgment confirming the Cohn Award is sufficiently firm to constitute a final adjudication for claim preclusion purposes.

**B.     Identical Issue**

California's "identical issue" requirement for collateral estoppel addresses whether "identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12 (2009). "[C]ourts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." *Id.* at 511.

---

[4] In addition to contradicting the law of the case, Chung's repetitive arguments themselves support finality – they demonstrate that the issue of whether Chung spoke as a public employee in the Op-Ed "has reached such a stage that [the] court sees no really good reason for permitting it to be litigated again." *Rodriguez*, 106 Cal. App. 5th at 658.

Here, Chung bases his First Amendment retaliation claim on the premise that he expressed himself in the Op-Ed "as a *private citizen* and not in his capacity as deputy district attorney[.]" SAC ¶ 16 (emphasis in original). He further alleges that "his official duties as deputy district attorney did *not* include writing opinion pieces or providing commentary to local newspapers" and he "was *not* required to communicate with the media or news organizations regarding matters of general public concern as part of his regular job duties." *Id.* ¶ 19 (emphasis is original). This distinction of private citizen versus public employee, and how Chung's job duties might inform the analysis, is identical to the issue Chung raised in the course of the arbitration. As discussed in the MSJ Order and above, the Cohn Award found just cause for discipline against Chung but reduced the suspension from ten working days to five. Brandwajn Decl., Ex. 6 at Ex. B. at 39-40. Arbitrator Cohn expressly considered Chung's defense that he suffered adverse employment actions in retaliation for exercising his First Amendment free speech rights in relation to the Op-Ed, finding that "when the matter at issue is just cause, that standard allows him to address relevant external law" and "First Amendment questions may or may not play a role in whether there is cause (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that discipline." *Id.* at 37, n.33. Relying on the evidence and pertinent Supreme Court precedent, Arbitrator Cohn ruled against Chung on the issue of First Amendment protections. Notably, Arbitrator Cohn found that "Rosen credibly testified that he had no issue with the content of the op-ed and, more important, Harman – the non-binding Skelly [Hearing Officer] – did not include content in her findings of rule violations. Moreover, she specifically advised [Chung] he was not being disciplined for expressing his personal opinions"; rather, Chung "violated Office rules by acting without authorization; i.e., misrepresenting his opinions as those of the Office. The bottom line is that, if the suspension (i.e., adverse employment action) was not based on content (i.e., speech), there is no First Amendment coverage." *Id.* at 37-38. Arbitrator Cohn further concluded that Chung spoke as a public employee in the Op-Ed, not a private citizen, and thus, his speech was not protected:

> When read as a whole and in context, with [Chung's] name and title, it would be unreasonable for a member of the community to believe the piece was written by a private citizen as opposed to a public

9

> employee. Simply put, to the extent the op-ed is seen to be exactly the type of speech the Constitution was intended to protect, there still may be other employment considerations. The parties hereto are attorneys steeped in First Amendment law; e.g., *Pickering v. Garcetti* [sic], etc. . . .
>
> Accordingly, while such issues are rarely found free from doubt, given this particular record where [Chung] is responsible for the February 14 op-ed despite his initial intent to write as a private citizen, it would be patently unreasonable for the Arbitrator to find that a reader would not believe he was speaking for/representing DAO. Thus, even if [Chung's] conduct was generally protected by the First Amendment, the County could nevertheless regulate through discipline that conduct. Thus, persuasive proof establishes cause for discipline . . .

Brandwajn Decl., Ex. 6 at Ex. B at pp. 38-39 (footnotes omitted). Chung presents no rebuttal to Rosen's demonstration that the same issue decided in the Cohn Award satisfies the "identical issue" requirement for collateral estoppel. The Court therefore finds the element satisfied.

### C. Actually Litigated and Necessarily Decided

"An issue is actually litigated [w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Wabakken v. California Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) (quoting *People v. Carter*, 36 Cal. 4th 1215, 1240 (2005)) (alterations in original).

Chung avers that the First Amendment issue was not properly before the arbitrator because Cohn's stated reluctance to consider evidence related to his First Amendment defense meant that the issue of whether Chung spoke as a public employee or private citizen through the Op-Ed left the issue not "actually litigated." Opp. at 23. Not so. As discussed above, the Court previously rejected Chung's contentions, finding that Chung presented evidence and argument regarding the First Amendment in the course of the arbitration, and that "the arbitrator sided with Chung and considered his First Amendment affirmative defense over the County's objections." MSJ Order (Dkt. No. 112) at 14-15; *see also* Mem. Dispo. at 5 (affirming this conclusion). This is the law of the case. *See Fallon*, 135 F.4th at 836. The Court sees no reason to disturb its finding that Chung insisted on the adjudication of his First Amendment rights to publish the Op-Ed throughout a two-day administrative arbitration regarding his suspension. Arbitrator Cohn's determination of the First Amendment defense was then enshrined in the state court judgment. As a result, the issue of

whether Chung spoke as a public employee in the February 14 Op-Ed was actually litigated in the earlier proceedings.[5]

Moreover, that issue was also necessarily decided. Considering the evidence and the parties' arguments, Arbitrator Cohn ruled – and the state court judgment confirmed – that "it would be unreasonable for a member of the community to believe the [February 14, 2021] piece was written by a private citizen as opposed to a public employee" and "despite [Chung's] initial intent to write as a private citizen, it would be patently unreasonable . . . to find that a reader would not believe he was speaking for/representing DAO." Brandwajn Decl., Ex. 6 at Ex. B at pp. 38-39. It was necessary for Arbitrator Cohn to decide this issue as part of the just cause analysis. *Id.* at 37 n.33 ("[W]hen the matter at issue is just cause, that standard allows [the arbitrator] to address relevant external law" and "First Amendment questions may or may not play a role in whether there is cause (i.e., a rational basis) for discipline and, if so, do protected speech rights absolve or mitigate that discipline."). Arbitrator Cohn found that Chung spoke as a public employee in the Op-Ed, and it was necessary for him to decide that issue to resolve Chung's First Amendment affirmative defense. This third element is also satisfied in favor of finding collateral estoppel.

### D.     Litigated by Entity in Privity

The Court found that Chung "was clearly in privity with GAA where he concedes that the union and its counsel represented him in the arbitration proceeding and Chung actively participated in the union's challenge to the discipline levied against him." MSJ Order (Dkt. No. 112) at 15-16. Chung does not contest this element and concedes it. Therefore, the Court finds the final element satisfied.

---

[5] This conclusion defeats Chung's argument that the First Amendment issue was not "properly before" the arbitrator, preventing satisfaction of the second factor under *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966). *See* Opp. at 16-17. Similarly, this conclusion defeats Chung's contention that he did not have a "full and fair opportunity" to litigate the issue through the arbitration and the state court confirmation, preventing satisfaction of the third factor of the *Utah Construction* fairness test. *See* Opp. at 17-22. Of course, the Court need not reach the *Utah Construction* fairness test at all in this Order because the Ninth Circuit affirmed the Court's earlier determination that the arbitration award and its confirmation could have preclusive effect. Mem. Dispo. at 5-6.

### E. Fairness

Beyond the four elements necessary for issue preclusion under California law, Chung argues that applying issue preclusion would prove unfair to him. *See* Opp. at 23-24. He insists that "[u]nder California law, collateral estoppel will apply in any setting *only* where such application comports with fairness and sound public policy." Opp. at 23 (quoting *Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 835 (1999) (emphasis in original)). But California's policies in favor of applying issue preclusion "include conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation." *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 878 (2010) (citations omitted). These policies do not include, as Chung proposes, ensuring that a public employee may pursue a First Amendment violation claim in federal court following (1) a labor arbitration proceeding in which he prevailed in part and lost in part followed by a (2) state court proceeding to confirm the arbitration award in which he made no effort to correct or amend a crucial issue of his constitutional retaliation claim and (3) a failure to challenge or appeal that final judgment that expressly incorporated the arbitration award. California's issue preclusion policies do not support permitting such a litigant yet another bite at the apple. Chung especially bemoans as unfair the missed opportunity to present his case in light of Arbitrator Cohn's prohibition on introduction of evidence related to his First Amendment defense in deference to this Court, however, the record reveals that Chung presented that evidence anyway. *See* MSJ Order (Dkt. No. 112) at 14-15; Mem. Dispo. at 5. But permitting Chung to relitigate the issue of whether he spoke as a public employee in the February 14 Op-Ed would undermine the integrity of the extensive due process already afforded, and it would up-end the finality of the Superior Court judgment. Application of issue preclusion here therefore "comports with fairness and sound public policy." *Vandenberg*, 21 Cal. 4th at 835.

### F. Collateral Estoppel Conclusion

In sum, the elements warranting the application of issue preclusion are met. Issue preclusion applies because (1) the Cohn Award was confirmed in the state court judgment and

12

became final when it was not appealed, (2) the issue of whether Chung spoke as a public employee in the Op-Ed considered in the arbitration is identical to the issue Chung needs to make out his First Amendment retaliation claim, (3) the issue was actually litigated as an affirmative defense and necessarily decided in the course of the arbitration and state court confirmation proceedings, and (4) the issue is asserted by Rosen, who is undisputedly in privity with the County. *See DKN Holdings*, 61 Cal. 4th at 825. As noted above, the state court's judgment confirming the Cohn Award determined that Chung spoke in his capacity as a public employee in his Op-Ed, and this issue is "fatal" to his First Amendment retaliation claim. *Dahlia*, 735 F.3d at 1067 n.4. Relitigating the issue of whether Chung expressed himself as a public employee in the Op-Ed would undermine the integrity of the extensive due process already afforded Chung, and it would additionally undermine a Superior Court final judgment that is entitled to "full faith and credit." Mem. Dispo. at 5. The determination that Chung spoke as a public employee precludes the entirety of Chung's sole cause of action against Rosen because Chung contends that all adverse employment actions alleged in his complaint were in retaliation for the same, underlying speech – the February 14 Op-Ed. SAC ¶¶ 21-26, 29-43.

Contrary to Chung's contention that the Ninth Circuit compels this action to "proceed" further, the Court's analysis here is consistent with the Ninth Circuit's reversal and remand of its earlier determination that the doctrine of claim preclusion barred Chung's First Amendment retaliation cause of action. *See* Opp. at 29-30. In particular, the Court's instant focus on the issue preclusive effect of the judicially-confirmed Cohn Award as to one of the elements of Chung's cause of action more narrowly and accurately hews to substance earlier resolved without reaching the scope of damages pursued by Chung. *See* Mem. Dispo. For the same reason, the conclusion is consistent with the state court's suggestion that its confirmation of the Cohn Award would have "no collateral estoppel effect to limit the damages sought in the federal case." *See* Dkt. No. 96-2 (state court order) at 222-23. Further contrary to Chung's argument, *see* Opp. at 19, the issue preclusion conclusion reached by the Court above is consistent with Judge Orrick's earlier analysis permitting Chung's retaliation claim to proceed because (1) Judge Orrick's consideration focused on the pleadings, not the elements necessary to survive summary judgment, and (2) Judge

Orrick did not consider the preclusive effect of a judicially-confirmed arbitration award. *Cf.* Dkt. No. 69 at 13.

Though Chung sought vindication of distinct harms suffered in this case beyond the earlier-litigated 10-day suspension, the purported retaliation originated from the same Op-Ed in which Chung claims to have spoken as a private citizen. *See* SAC ¶¶ 34-35. Indeed, the factual recognition that the full scope of damages Chung may pursue in this federal case was not litigated in the Arbitration does not contradict a determination that the capacity in which Chung spoke in the Op-Ed was litigated within the Arbitration at his own urging and as part of his affirmative defense. The Court does not here preclude, nor does it even reach, the full scope of damages pursued by Chung as it had in its first order granting summary judgment because the narrower analysis of issue preclusion establishes that he cannot prove a constitutional violation as a matter of law.

Chung resists the issue-preclusive effect of the state court judgment based in part on the availability of previously unconsidered evidence – an email chain between Rosen and Jay Boyarsky. *See* Opp. at 7-8, 12, 25. First, this evidence is not new. *Compare, e.g.*, Opp. (Dkt. No. 143) at 7-8, 12, and 25 (discussing email chain between Rosen and Jay Boyarsky) *with* Opp. to First MSJ (Dkt. No. 96) at 7, 13, 25 (discussing same email chain). Second, the email chain bears no impact on whether Chung spoke as a private citizen in the Op-Ed. *See Eng*, 552 F.3d at 1070. The email chain instead informs the third element of the test, causation, in which Chung must prove "plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Id.* at 1070. Chung's reliance on the email chain accordingly fails to move the needle as to the issue resolved in the Cohn Award and confirmed in the state court judgment.

Again, the arbitrator's determination that Plaintiff spoke in his capacity as a public employee in his February 14 Op-Ed, a conclusion enshrined in the state court judgment and thereafter left undisturbed, is "fatal" to his First Amendment retaliation claim. *Dahlia*, 735 F.3d at 1067 n.4. Thus, because Chung is precluded from establishing that he was speaking as a private citizen in the Op-Ed, the speech is not constitutionally protected, and Chung's First Amendment retaliation claim fails as a matter of law.

14

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Rosen's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 17, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**